## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| AUTO - OWNERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. |
| TABBY PLACE HOMEOWNERS ASSOCIATION, INC.; GAYLE BAKER; DONALD J. BRUNELLE; JUDITH A. BRUNELLE; JANE FRASER; BURKE MCCALL HARRISON; VICKI S. HARRISON; JOHN LIJOI; JUDITH C. PHILLIPS; ROBERT W. WILLIAMSON, III; AND RENEE J. WILLIAMSON | ) ) ) ) ) ) ) ) ) ) ) ) | __CV421-346__ |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, AUTO-OWNERS INSURANCE COMPANY ("Auto-Owners"), Plaintiff in the above-styled action, and files this Complaint for Declaratory Judgment, showing this honorable Court as follows:

## Parties and Jurisdiction

1.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and

other legal relations surrounding questions of actual controversy that presently exist among Plaintiff Auto-Owners and Tabby Place Homeowners Association, Inc. (the "Association"); Gayle Baker ("Defendant Baker"); Donald J. Brunelle and Judith A. Brunelle (collectively, "the Brunelle Defendants"); Jane Fraser ("Defendant Fraser"); Burke McCall Harrison and Vicki S. Harrison (collectively, "the Harrison Defendants"); John Lijoi ("Defendant Lijoi"); Judith C. Phillips ("Defendant Phillips"); and Robert W. Williamson, III and Renee J. Williamson (collectively, "the Williamson Defendants").

<div align="center">2.</div>

Auto-Owners is a corporation organized and existing under the laws of the state of Michigan, with its principal place of business in Lansing, Michigan. Auto-Owners submits itself to the jurisdiction and venue of this Court.

<div align="center">3.</div>

Upon information and belief, Defendant Tabby Place Homeowners Association, Inc. is a Georgia corporation existing under the laws of the state of Georgia, and can be served through its registered agent, James D. Benefield, III., at 1700 Frederica Road, Suite 207, St. Simons Island, Glynn County, Georgia 31522.

<div align="center">4.</div>

Upon information and belief, Defendant Gayle Baker, is a citizen and resident of the state of Georgia.  She may be served at her domicile located at 127 Daufuski Lane, St. Simons Island, Glynn County, Georgia 31522.

5.

Upon information and belief, Defendants Donald J. Brunelle and Judith A. Brunelle are citizens and residents of the state of Georgia.  They may be served at their domicile located at 251 Villager Drive, St. Simons Island, Glynn County, Georgia 31522.

6.

Upon information and belief, Defendant Jane Fraser is a citizen and resident of the state of Georgia.  She may be served at her domicile located at 165 North Harrington Road, St. Simons Island, Glynn County, Georgia 31522.

7.

Upon information and belief, Defendants Burke McCall Harrison and Vicki S. Harrison are citizens and residents of the state of Georgia.  They may be served at their domicile located at 253 Villager Drive, St. Simons Island, Glynn County, Georgia 31522.

8.

Upon information and belief, Defendant John Lijoi is a citizen and resident of the state of Georgia. He may be served at his domicile located at 263 Villager Drive, St. Simons Island, Glynn County, Georgia 31522.

9.

Upon information and belief, Defendant Judith C. Phillips is a citizen and resident of the state of Georgia. She may be served at her domicile located at 115 Daufuski Lane, St. Simons Island, Glynn County, Georgia 31522.

10.

Upon information and belief, Defendants Robert W. Williamson and Renee J. Williamson are citizens and residents of the state of Georgia. They may be served at their domicile located at 121 Daufuski Lane, St. Simons Island, Glynn County, Georgia 31522.

11.

Defendant Association seeks coverage from Auto-Owners under a policy of liability insurance and an umbrella liability insurance policy for the allegations made against it in a lawsuit filed against it by Defendant Baker; the Brunelle Defendants; Defendant Fraser; the Harrison Defendants; Defendant Lijoi; Defendant Phillips; and the Williamson Defendants, which is further detailed below (the "Underlying Lawsuit").

12.

Defendant Baker; the Brunelle Defendants; Defendant Fraser; the Harrison Defendants; Defendant Lijoi; Defendant Phillips; and the Williamson Defendants, are plaintiffs in the Underlying Lawsuit which is further detailed below (collectively, "the Homeowner Defendants") and, therefore, are necessary parties to this action.

13.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive on interest and costs, and is among citizens of different states.

14.

Venue in this action is proper pursuant to 28 U.S.C. § 1391.

**Factual Background**

15.

On or about February 17, 2021, the Homeowner Defendants filed a Motion for Leave to Amend Complaint to Add a Party in pending litigation in the Superior Court of Glynn County, Georgia, Civil Action File No. 2019CV1250C. The Homeowner Defendants' Second Amended Complaint was attached as Exhibit "E" to the Motion for Leave. A true and correct copy of the Homeowner Defendants' Motion for Leave to Amend Complaint to Add a Party is attached hereto as Exhibit

"1". A true and correct copy of the Homeowner Defendants' Second Amended Complaint is attached hereto as Exhibit "2".

16.

The Homeowner Defendants have been included as named Defendants in this action for declaratory relief because they have a potential financial interest in the outcome of this action.

17.

The underlying Defendant Association has been served with the underlying lawsuit and filed its answer to the same.

18.

The Underlying Lawsuit seeks damages and injunctive relief for the damages to the Homeowner Defendants' property allegedly caused by the construction and maintenance of retention ponds and other storm water runoff maintenance systems located at the Tabby Place subdivision and an adjacent subdivision, Captain's Cove subdivision. Ex. "2", ¶¶ 20-28.

19.

The actions alleged in the Underlying Lawsuit, which caused the alleged damages, began by at least February 16, 2018. Id., ¶¶ 37 - 44.

20.

The claims in the Underlying Lawsuit relate to the flooding of the Homeowner Defendants' property as a result of the alleged discharge of storm water, as well as silt, sediment, and fecal coliforms caused by excessive storm water flowing from the Association's retention ponds and other storm water runoff maintenance systems. Id., ¶ 21.

21.

According to the Homeowner Defendants, on February 18, 2018, before the Underlying Lawsuit was filed, the Glynn County Community Development Department ("GCCDD") noted that the Tabby Place drainage record drawings needed further review because the retention ponds were not draining as outlined in the drainage calculations submitted in conjunction with the development plans and the GCCDD needed updated retention pond infiltration data.  In March 2018, the GGCCDD requested that the Glynn County Board of Commissioners remove approval of Tabby Place's final plat from the March 15, 2018, meeting agenda because the water infiltration issues related to the retention ponds had not been resolved.  Id., ¶¶ 37 – 40.

22.

The Homeowner Defendants allege that the Association failed to take all reasonable steps necessary to minimize or prevent excessive stormwater and that

their failure to design, install, or maintain appropriate retention ponds and other storm water maintenance systems caused violations of Georgia's water quality standards. Further, the Homeowner Defendants allege that the Association changed the permeable ground cover to impervious surfaces without adequately containing the resulting increased stormwater runoff. Id., ¶¶ 69, 109.

23.

The claims against the Association in the underlying suit include: continuing trespass from repeated storm water discharges onto the Homeowner Defendants' property; continuing nuisance as a result of the storm water discharge by the Association (related to breaches of the Association's alleged duty to inspect, maintain, repair and/or stabilize the detention pond); negligence, negligence *per se*; riparian rights; unjust enrichment; and injunctive relief. The Homeowner Defendants also seek attorney's fees and expenses against the Association in the Underlying Lawsuit. Id., ¶¶ 91 – 140.

24.

On September 14, 2020, Olde Plantation Group, LLC ("Olde Plantation")– who was the record owner of the three retention ponds located in the Tabby Place Subdivision – transferred a section of the Tabby Place Subdivision, including the three retention ponds, to the Association via quitclaim deed. Ex. "1", ¶ 2; Ex. "2", ¶ 47.

8

25.

By the time Olde Plantation transferred ownership of the retention ponds located in the Tabby Place Subdivision to the Association, the Homeowner Defendants had already filed an Original Complaint (filed on or around June 2019), and an Amended Complaint (filed on or around August 2020).  Ex. "1", ¶ 2.

26.

The Association first notified Auto-Owners of the alleged occurrence and claim against it on March 1, 2021, at least three years after the alleged damages at issue in the Underlying Lawsuit began, and almost six months after the Association received notice of the claim.

27.

On March 17, 2021, after receiving notice of the claim and Underlying Lawsuit for the first time on March 1, 2021, Auto-Owners sent a reservation of rights letter to the Association.  A true and correct copy of the reservation of rights letter, dated March 17, 2021, is attached hereto as Exhibit "3".

28.

As indicated in its March 17, 2021 reservation of rights letter, Auto-Owners is providing the Association with a defense to the Underlying Lawsuit, subject to a complete reservation of rights.

## Auto-Owners' CGL Policy

### 29.

On February 18, 2021, Auto-Owners issued a renewal Commercial General Liability policy, policy number 192318-80256653-21 (the "CGL Policy"), to Tabby Place Homeowners Association, Inc., effective from April 5, 2021 through April 5, 2022, with limits of $1,000,000 "Each Occurrence", $1,000,000 for a Personal and Advertising injury, and a $1,000,000 General Aggregate limit. The Products-Completed Operations Limit is $2 million. However, under the Commercial General Liability Plus Coverage Endorsement, the Products-Completed Operations Limit is doubled to $4 million. Similarly, the CGL policy also contains an endorsement that amends the General Aggregate Limit to a total of $4 million. A true and correct copy of the CGL Policy is attached hereto as Exhibit "4".

### 30.

The Commercial General Liability Coverage Form provides coverage under Coverage A as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.   We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in Section **III**-Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

31.

In addition to the above Insuring Agreement, the CGL Policy contains the following requirements for coverage:

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence[1]" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive

---

[1] The policies defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury, or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1 of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

32.

The CGL Policy contains various exclusions under Coverage which may serve as a bar to coverage.

33.

The CGL Policy contains an Expected Or Intended Injury Exclusion which precludes coverage for:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

34.

The CGL Policy contains a Contractual Liability exclusion, which excludes coverage for:

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of a contract or agreement; or

**(2)** Assumed in a contract or agreement that is An "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney's fees and necessary litigation expenses incurred by or for a party other

than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

35.

The CGL Policy contains a Pollution exclusion, which excludes coverage for:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants[2]":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

---

[2] The policies defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed."

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or…

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor….

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage"

that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

…

36.

The CGL Policy also contains "business risk" exclusions under Coverage A, which bar coverage for:

**j. Damage To Property**

"Property damage" to:

…

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraphs … **(5)** and **(6)** of this exclusion to not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

…

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

16

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work'; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

37.

The Commercial General Liability Coverage Form also provides coverage for

bodily injury and property damage under Coverage B as follows:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damage is limited as described in Section **III** – Limits Of Insurance: and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

38.

The CGL Policy's Commercial General Liability Plus Coverage endorsement

defines "personal and advertising injury" as follows:

   14. "Personal and advertising injury" means injury including consequential "bodily injury", arising out of one or more of the following offenses:

18

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:

e. Oral or written publication of material, in any manner, that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement";

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

h. Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

Form 55352 (5-17), p. 1.

39.

The CGL policy excludes coverage under Coverage B for a "personal and advertising injury" in accordance with the following:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

…

40.

Similar to Coverage A above, Coverage B of the CGL Policy also contains an exclusion for "pollution" and "pollution-related" damages as follows:

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

41.

The CGL policy also contains the following Commercial General Liability Conditions, which apply to both Coverages A and B:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may

20

result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

42.

In addition to the above, Endorsement Form 55352 (5-17) amends the requirement at 2a to include the following:

    **a.** Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

        **(1)** If the notice of a new claim is given to your "employee"; and

        **(2)** That "employee" fails to provide us with notice as soon as practicable.

    **b.** This exception shall not apply:

        **(1)** To you; or

        **(2)** To any officer, director, partner, risk manager or insurance manager of yours.

### **Auto-Owners' Umbrella Policy**

43.

On February 18, 2020, Auto-Owners issued a Commercial Umbrella Policy to the Association, policy number 52-256-586-00, effective from April 5, 2020 through April 5, 2021, with a policy limit of $1,000,000 for "Each Incident" and a Retained Limit of $10,000 (the "Umbrella Policy"). A true and correct copy of the

umbrella policy is attached hereto as Exhibit "5".

<div align="center">44.</div>

The Umbrella Policy provides coverage as follows:

> **A. We** will pay those sums included in **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:
>
> > **1. Bodily injury;**
> >
> > **2. Property damage;**
> >
> > **3. Personal injury;** or
> >
> > **4. Advertising injury**
>
> to which this insurance applies caused by an **incident**.
>
> **B.** If the basis of coverage for an **incident** is:
>
> > **1.** An occurrence:
> >
> > > **a.** The **bodily injury** and **property damage** must take place during the policy term; and
> > >
> > > **b.** The **incident** must take place in the **policy territory**; and
> > >
> > > **c.** This insurance applies to **bodily injury** and **property damage** only if:
> > >
> > > > **(1)** Before the beginning of the policy term shown in the Declarations, none of the following persons knew that the **bodily injury** or **property damage** had occurred in whole or in part:
> > > >
> > > > …
> > > >
> > > > **(d)** If **you** are designated in the Declarations as an organization other than a partnership, joint

venture or limited liability company, **your executive officers** and directors.

**(e)** **Your** employee authorized by **you** to give or receive notice of an **incident**.

If any of the above persons knew prior to the policy term that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy term will be deemed to have been known before the beginning of the policy term shown in the Declarations.

**(2)** **Bodily injury** and **property damage** will be deemed to have been known to have occurred at the earliest time when any person shown in **c.(1)(a)** through **c.(1)(e)** immediately above:

**(a)** Reports all, or any part, of the **bodily injury** or **property damage** to **us** or any other insurer;

**(b)** Receives a written or verbal demand or claim for damages because of the **bodily injury** or **property damage**; or

**(c)** Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

**2.** An offense:

**a.** The **personal injury** and **advertising injury** must be committed during the policy term; and

**b.** The **incident** must take place in the **policy territory**.

Form 26800(7-05), pgs. 6-7.

45.

The Umbrella Policy's definition of bodily injury and property damage are virtually identical to the CGL Policy.

46.

The Umbrella Policy defines "personal injury" as follows:

> **L. Personal injury** means injury other than **bodily injury**, arising out of one or more of the following offenses:
>
> **1.** False arrest, detention or imprisonment;
>
> **2.** Malicious prosecution;
>
> **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> **4.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **5.** Oral or written publication of material, in any manner, that violates a person's right to privacy; or
>
> **6.** Discrimination or humiliation.

Form 26800(7-05), p.4.

47.

The Umbrella Policy defines "advertising injury" as follows:

> **B. Advertising injury** means injury other than **bodily injury**, arising out of one or more of the following offenses:
>
> **1.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a

person's or organization's good, products or services in your advertisement;

**2.** Oral or written publication, in any manner, of material that violates a person's right of privacy in your advertisement;

**3.** The use of another's advertising idea in your advertisement; or

**4**. Infringing upon another's copyright, trade dress or slogan in your advertisement.

Form 26800(7-05), p.2.

<p style="text-align:center">48.</p>

The Umbrella Policy defines "incident" as follows:

**Incident** means either an occurrence or an offense, whichever is the basis of coverage, then:

**1.** When coverage applies on an occurrence basis, **incident** means an accident with respect to:

   **a.** **Bodily injury**, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**; or

   **b.** **Property damage** including continuous or repeated exposure to substantially the same general harmful conditions.   Continuous or repeated exposure to substantially the same general harmful conditions constitutes one **incident**.

**2.** When coverage applies on an offense basis, **incident** means an offense committed by the **insured** resulting in **personal injury** or **advertising injury**, including all such injuries sustained by any one person or organization.

Form 26800(7-05), p.3.

49.

The Umbrella Policy contains the following exclusion of coverage for certain

damages incurred:

> **B.** Damages claimed for any loss, cost or expenses incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> **1. Your product**;
>
> **2. Your work**; or
>
> **3. Impaired property**
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Form 26800(7-05), p. 8.

50.

The Umbrella Policy contains the following exclusion of coverage for

"property damage" or "personal injury" that arises out of out of "the actual, alleged

or threatened discharge, dispersal, seepage, migration, release or escape of

'pollutants'"[3]:

_____

[3] The Umbrella Policy's definition of "pollutants" is almost identical to the CGL Policy's definition.  The Umbrella Policy also identifies "liquids" and "gases" as "pollutants".

**J.1. Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

…

    **d.** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**. …

    **e.** At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste.

    **f.** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      **(1)** Any **insured**; or

      **(2)** Any person or organization for whom **you** may be legally responsible.

    **g.** At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the **pollutants** are brought on or to the premises, site, or location in connection with such operations by such **insured**, contractor or subcontractor. …

    **h.** At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**.

**2.** **Personal injury** or **advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

**3.** Any loss, cost or expense arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

**b.** Claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, this paragraph does not apply to liability for damages because of covered **property damage** that the **insured** would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **suit** by or on behalf of a governmental authority.

Form 26800(7-05), pp. 10-11.

51.

The Umbrella Policy contains the following exclusion of coverage for:

**M.** **Bodily injury** or **property damage** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

Form 26800(7-05), p. 12.

52.

The Umbrella Policy contains the following exclusion of coverage for:

    **Q.** **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

        **1.** Assumed in a contract or agreement that is an **insured contract**, provided such **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement.  However, if the insurance under this policy does not apply to the liability of the **insured**, it also does not apply to such liability assumed by the **insured** under an **insured contract**; or

        **2.** That the **insured** would have in the absence of the contract or agreement.

Form 26800(7-05), p. 12.

<div align="center">53.</div>

The Umbrella Policy contains the following "personal injury" and "advertising exclusion" of coverage for:

    **R.** **Personal injury[4]** or **advertising injury;**

        **1.** Caused by or at the direction of any **insured** with the knowledge that the act would violate the rights of another and would inflict **personal injury** or **advertising injury**; or

        **2.** Expected or intended by any **insured**.  This exclusion **R.2.**, does not apply to **personal injury**.

Form 26800(7-05), p. 12.

<div align="center">54.</div>

---

[4] The umbrella policy also contains a Personal Injury Liability-Following Form endorsement, which provides that the "personal injury" exclusion does not apply if any scheduled underlying insurance provides such coverage.  Form 26531(7-05).

The Umbrella Policy also excludes from coverage any "personal injury" or "advertising injury" that occurred prior to the Umbrella Policy's inception date as follows:

> **W.** **Personal injury** or **advertising injury** arising out of any incident first committed before the beginning of the policy term.

Form 26800(7-05), p. 13.

<div align="center">55.</div>

The Umbrella Policy contains the following exclusion of coverage for:

> **Y.** **Property damage** to:
>
> **1.** Property **you**:
>
> > **a.** Own, including any cost or expense incurred by **you**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to another's property; …
>
> **2.** Property that any of **your**:
>
> > **a.** Employees;
> >
> > **b.** Volunteer workers;
> >
> > **…**
>
> Own, rent, occupy or use.  However, this exclusion, **Y.2.**, shall not apply to **your** liability for damage to such property.

3. Premises **you** shall give away or abandon, if the **property damage** arises out of any part of those premises;

…

6. That particular part of real property on which any **insured** or any contractor or subcontractor working directly or indirectly on **your** behalf are performing operations, if **property damage** arises out of those operations; or

7. That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.[5]

This exclusion does not apply with respect to:

a. **Y.3.**, if the premises are **your work** and were never occupied, rented or held for rental by **you**;

b. **Y.4.**, **5.**, **6.**, and **7.** to liability assumed under a sidetrack agreement; or

c. **Y.7.** to **property damage** included in the **products-completed operations hazard**.

Form 26800(7-05), pp. 13-14.

56.

The Umbrella Policy excludes coverage for certain property damage arising out of the products-completed operations hazard:

AA. **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

---

[5] The umbrella policy contains a Property Damage To Your Work-Following Form endorsement which provides an exception for "your work" coverage if any scheduled underlying insurance provides such coverage. Form 66174(12-17).

Form 26800(7-05), p. 14.

<div align="center">57.</div>

The Umbrella Policy contains the following exclusion of coverage for:

>**BB.** **Property damage** to **impaired property** or property that has not been physically injured, arising out of:
>
>> **1.** A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**;
>>
>> **2.** A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

Form 26800(7-05), p. 14.

<div align="center">58.</div>

The Umbrella Policy also contains the following exclusion of coverage for punitive or exemplary damages:

>**DD.1.** Punitive or exemplary damages, except to the extent that coverage is provided in any **scheduled or underlying insurance** shown in the Declarations under the Schedule of Underlying Insurance provided such coverage is maintained:
>
>> **a.** At the agreed liability limits shown in the Schedule of Underlying Insurance; and
>>
>> **b.** In accordance with the **Maintenance of Underlying Insurance** condition.
>
>> **2.** When coverage is afforded for punitive or exemplary damages under this policy;

<div align="center">33</div>

**a.** Such damages are included with compensatory damages and the limits shown in the Declarations; and

**b.** Are not to be construed, in any event, as additional amounts of insurance.

Form 26800 (7-05), pp. 14-15.

## **Reservation of Rights**

59.

On or about March 17, 2021, Auto-Owners sent a reservation of rights letter to the Association.

60.

In the March 17, 2021 reservation of rights letter to the Association, Auto-Owners agreed to provide the Association with a defense of the Underlying Lawsuit pending a resolution of the coverage issues set forth in the letter.

61.

Moreover, the reservation of rights letter requested that, should the Association have any other policies of insurance, those insurers should also be put on notice of the Underlying Lawsuit.  To date, the Association has not notified of Auto-Owners of the existence of any other insurance policy, other than the CGL Policy and Umbrella Policy issued by Auto-Owners.

62.

As Auto-Owners is currently providing the Association with a defense to the Underlying Lawsuit under a complete reservation of rights, Auto-Owners has reserved its right to withdraw its defense and/or disclaim coverage and indemnification for all or part of any judgment or settlement that may be obtained against the Association in the Underlying Lawsuit.

**First Claim for Relief**

63.

Auto-Owners reiterates paragraphs 1 through 62 as if fully set forth herein.

64.

The Commercial General Liability Coverage Form provides coverage under Coverage A as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III**-Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

65.

In addition to the above Insuring Agreement, the CGL Policy contains the following requirements for coverage:

**b**. This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c**. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy

period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury, or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1 of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

66.

As stated above, the Underlying Lawsuit seeks damages and injunctive relief that arise out of claims that the Homeowner Defendants' property was damaged. Specifically, the Homeowner Defendants alleged that their properties suffered damage due to the faulty construction and maintenance of retention ponds and other storm water runoff maintenance systems located at Tabby Place subdivision and an adjacent subdivision, Captain's Cove.  Ex. 2, ¶¶ 20-28.  As the damages sought by the Homeowner Defendants in the Underlying Lawsuit arise out of "property

damage," Section I, Coverage A, is the relevant coverage form under the Policy as it provides coverage for claims arising out of "bodily injury" and "property damage" as stated above in paragraph 65.  Tabby Place's contractor was previously notified of these alleged issues and, as such, may have notified Defendant Tabby Place HOA of these issues prior to the issuance of the Policy and/or the policy period.

67.

To the extent that the CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

68.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, so that Auto-Owners may have its rights and duties under the CGL Policy determined and avoid the possible accrual of damages.

69.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that the Association may be liable for the claims against it in the Underlying Lawsuit.

**Second Claim for Relief**

70.

Auto-Owners reiterates paragraphs 1 through 69 as if fully set forth herein.

71.

To the extent that the CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

72.

Specifically, the CGL Policy contains an Expected Or Intended Injury Exclusion which precludes coverage for:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

73.

To the extent the damages at issue in the Underlying Lawsuit arise out of out of bodily injury or property damage expected or intended by the Association, Exclusion A. referenced above in paragraph 72 bars coverage.

No coverage is owed for any liability against the Association that comes within the expected or intended injury exclusion set forth in paragraph 68, including, but not limited to, any punitive damages that may be sought against it, which, if

awarded, would necessarily be based on conduct that falls within this exclusion.

74.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, so that Auto-Owners may have its rights and duties under the CGL Policy determined and avoid the possible accrual of damages.

75.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within the expected or intended exclusion as set forth above in paragraph 72, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

### **Third Claim for Relief**

76.

Auto-Owners reiterates paragraphs 1 through 75 as if fully set forth herein.

77.

The CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

78.

Specifically, the CGL Policy contains an exclusion for contractual liability, which provides as follows:

**2. Exclusions**

This insurance does not apply to:

…

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(3)** That the insured would have in the absence of a contract or agreement; or

**(4)** Assumed in a contract or agreement that is An "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(c)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(d)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Form CG 00 01 04 13, p. 2.

## 79.

To the extent that the damages at issue in the Underlying Lawsuit arise out of the alleged contractual liability of the Association, the contractual liability exclusion contained in the CGL Policy applies.

## 80.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the CGL Policy determined and avoid the possible accrual of damages.

## 81.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within the contractual liability exclusion contained in CGL Policy.

## **Fourth Claim for Relief**

## 82.

Auto-Owners reiterates paragraphs 1 through 81 as if fully set forth herein.

## 83.

The CGL Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-

Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

<div align="center">84.</div>

Specifically, the CGL Policy contains the following exclusion of coverage for "'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'":

**f. Pollution**

   **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants[6]":

     **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .

     **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

     **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

       **(i)** Any insured; or

       **(ii)** Any person or organization for whom you may be legally responsible; or…

---

[6] The policies defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed."

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor….

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of covered "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

…

Form CG 00 01 04 13, pp. 3-4.

<div align="center">85.</div>

The Homeowner Defendants assert that the Association's acts or omissions have caused damage to the Homeowner Defendants' property, including but not limited to the depositing of stormwater runoff and loose soil, as well as the discharge of fecal coliforms, into the ground and surface water.  The Homeowner Defendants also allege that the stormwater is "discharging sediments and pollutants onto [Homeowner Defendants'] property". Ex. "1", ¶ 21

<div align="center">86.</div>

To the extent that the alleged irritants and contaminants described in the Underlying Lawsuit qualify as "pollutants," the pollution exclusion referenced above in paragraph 84 applies to any such damages arising therefrom.

<div align="center">87.</div>

No coverage is owed for any liability against the Association that comes within the pollution exclusion contained in the policy, including, but not limited to, any punitive damages that may be sought against the Association, which, if awarded, would necessarily be based on conduct that falls within this exclusion.

<div align="center">88.</div>

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights

<div align="center">45</div>

and duties under the CGL Policy determined and avoid the possible accrual of damages.

<div align="center">89.</div>

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within the pollution liability exclusion contained in the CGL Policy, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

<div align="center">

### Fifth Claim for Relief

</div>

<div align="center">90.</div>

Auto-Owners reiterates paragraphs 1 through 89 as if fully set forth herein.

<div align="center">91.</div>

The CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

<div align="center">92.</div>

Specifically, the CGL Policy contains "business risk" exclusions under Coverage A, which bar coverage for:

**j.  Damage To Property**

<div align="center">46</div>

"Property damage" to:

…

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraphs … **(5)** and **(6)** of this exclusion to not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

…

## m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

47

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work'; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Form CG 00 01 04 13, pp. 4-5.

93.

To the extent the alleged "property damage" at issue in the Underlying Lawsuit arose out of the Association's, or someone acting on behalf of the Association, work or operations such that the business risk exclusions are triggered, no coverage exists under Coverage A for such damages.

94.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the

possible accrual of damages.

<center>95.</center>

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within Exclusion J. – N. under the CGL Policy's Coverage A and referenced above in paragraph 92.

<center>**Sixth Claim for Relief**</center>

<center>96.</center>

Auto-Owners reiterates paragraphs 1 through 95 as if fully set forth herein.

<center>97.</center>

The CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

<center>98.</center>

Specifically, the CGL Policy only provides coverage under Coverage B for "personal and advertising injury", as follows:

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against

<center>49</center>

any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

**(1)**   The amount we will pay for damage is limited as described in Section **III** – Limits Of Insurance: and

**(2)**   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.**   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Form CG 00 01 04 13, p.5.

<p align="center">99.</p>

To the extent the alleged damages do not qualify as "personal and advertising injury," no coverage exists.  Likewise, to the extent the alleged offense in the Underlying Lawsuit was not committed during the policy period, coverage also does not exist.

<p align="center">100.</p>

A controversy of judiciable nature presently exists among the parties, which

demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

101.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that falls outside of the coverage provided by the CGL Policy's Coverage B, referenced above in 98.

**Seventh Claim for Relief**

102.

Auto-Owners reiterates paragraphs 1 through 101 as if fully set forth herein.

103.

The CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

104.

Specifically, Coverage B of the CGL Policy contain an exclusion to coverage for "personal and advertising injury" for the knowing violation of rights of another as follows:

### 2. Exclusions

This insurance does not apply to:

…

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

…

Form CG 00 01 04 13, p.5.

### 105.

In the Underlying Lawsuit, the Homeowner Defendants allege that the Association's alleged acts or omissions, which resulted in flooding the Homeowner Defendants' property, "unreasonably interfere[d] with [Homeowner Defendants'] exclusive rights of possession of their property."   Moreover, the Homeowner Defendants allege that "[the Associations'] interference with [the Homeowner Defendants'] property rights is substantial, material, and unreasonable."

### 106.

To the extent that the alleged injury was caused by or at the direction of the Association with knowledge that it would violate the Homeowner Defendants' rights and cause "personal injuries," coverage is excluded.

### 107.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

<div align="center">108.</div>

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within the knowing violation of rights of another exclusion, as set forth in the CGL Policy's Coverage B and referenced above in paragraph 104, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

<div align="center">

**Eighth Claim for Relief**

</div>

<div align="center">109.</div>

Auto-Owners reiterates paragraphs 1 through 108 as if fully set forth herein.

<div align="center">110.</div>

The CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

<div align="center">111.</div>

Specifically, Coverage B of the CGL Policy contains the following exclusion to coverage for "personal and advertising injury" arising from a criminal act as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> …
>
> **d. Criminal Acts**
>
> > "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
>
> …

Form CG 00 01 04 13, p.6.

## 112.

In the Underlying Lawsuit, the Homeowner Defendants allege that the Association's alleged acts or omissions violate state or local laws, and breached statutes, including O.C.G.A. § 44-8-1.

## 113.

To the extent that any alleged "personal and advertising injury" arose out of a criminal act committed by the Association or at its direction, coverage may be precluded.

## 114.

A controversy of judiciable nature presently exists among the parties, which

demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

115.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that falls within the criminal acts exclusion, as set forth in the CGL Policy's Coverage B and referenced above in paragraph 111, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

**Ninth Claim for Relief**

116.

Auto-Owners reiterates paragraphs 1 through 115 as if fully set forth herein.

117.

The CGL Policy issued by Auto-Owners does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

118.

Specifically, the CGL Policy's "personal and advertising injury" coverage under Coverage B also excludes the following:

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-related

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Form CG 00 01 04 13, p.6.

### 119.

As previously discussed herein, the Homeowner Defendants assert that the Association's acts or omissions have caused damage to the Homeowner Defendants' property, including but not limited to the depositing of stormwater runoff and loose soil, as well as the discharge of fecal coliforms, into the ground and surface water. The Homeowner Defendants also allege that the stormwater is "discharging sediments and pollutants onto Plaintiff's property,"

### 120.

To the extent exclusions m. and n. apply, no coverage exists under the CGL Policy's Coverage B.

121.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

122.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that falls within the criminal acts exclusion, as set forth in the CGL Policy's Coverage Form B and referenced above in paragraph 118, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

**Tenth Claim for Relief**

123.

Auto-Owners reiterates paragraphs 1 through 122 as if fully set forth herein.

124.

The CGL Policy at issue require the Association to give timely notice of a claim.

125.

Specifically, the CGL Policy contains the following conditions precedent to coverage, which apply to Coverage A and B:

### SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

<div align="center">126.</div>

In addition to the above, Endorsement Form 55352 (5-17) amends the requirement at 2a to include the following:

  **a.** Paragraphs **a.** and **b.** of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

    **(1)** If the notice of a new claim is given to your "employee"; and

    **(2)** That "employee" fails to provide us with notice as soon as practicable.

  **b.** This exception shall not apply:

    **(1)** To you; or

    **(2)** To any officer, director, partner, risk manager or insurance manager of yours.

<div align="center">127.</div>

The actions and violations in the Underlying Lawsuit, which caused the alleged damages, began by at least February 16, 2018 when the GCCDD noted that the Tabby Place drainage record drawings needed further review because the retention ponds were not draining as outlined in the drainage calculation submitted in conjunction with the development plans. See Ex. "1", ¶¶ 37-44.

128.

The Association was served with the Homeowner Defendants' Motion for Leave to Amend Complaint to Add a Party on or about February 17, 2021. However, the Association did not notify Auto-Owners of (1) an offense or "occurrence" that may result in a claim, (2) the Homeowner Defendants' claim, or (3) the Underlying Lawsuit until March 1, 2021.

129.

To the extent that the Association failed to give notice "as soon as practicable" of the claim, offense, "occurrence", or suit, the Association may have breached preconditions to coverage under the CGL policy, such that no coverage is owed to the Association.

130.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by the Court, so that Auto-Owners may have its rights and duties under the CGL Policy determined and avoid the possible accrual of damages.

131.

Accordingly, Auto-Owners seeks a declaration from this Court that no indemnification or duty to defend is owed to the Association for any liability or damages that may be incurred by the Association in the Underlying Lawsuit because it failed to provide timely notice under the terms and conditions of the CGL Policy issued to it.

**Eleventh Claim for Relief**

132.

Auto-Owners reiterates paragraphs 1 through 131 as if fully set forth herein.

133.

To the extent that the Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against it in the Underlying Lawsuit.

134.

The Umbrella Policy at issue provides as follows:

**COVERAGE**

**A. We** will pay those sums included in **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

**1. Bodily injury;**

**2. Property damage;**

**3. Personal injury;** or

**4. Advertising injury**

to which this insurance applies caused by an **incident**.

**B.** If the basis of coverage for an **incident** is:

**1.** An occurrence:

    **a.** The **bodily injury** and **property damage** must take place during the policy term; and

    **b.** The **incident** must take place in the **policy territory**; and

    **c.** This insurance applies to **bodily injury** and **property damage** only if:

        **(1)** Before the beginning of the policy term shown in the Declarations, none of the following persons knew that the **bodily injury** or **property damage** had occurred in whole or in part:
…

        **(d)** If **you** are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, **your executive officers** and directors.

        **(e)** **Your** employee authorized by **you** to give or receive notice of an **incident**.

If any of the above persons knew prior to the policy term that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy term will be deemed to have been known before the beginning of the policy term shown in the Declarations.

**(2)** **Bodily injury** and **property damage** will be deemed to have been known to have occurred at the earliest time when any person shown in **c.(1)(a)** through **c.(1)(e)** immediately above:

**(a)** Reports all, or any part, of the **bodily injury** or **property damage** to **us** or any other insurer;

**(b)** Receives a written or verbal demand or claim for damages because of the **bodily injury** or **property damage**; or

**(c)** Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

**2.** An offense:

**a.** The **personal injury** and **advertising injury** must be committed during the policy term; and

**b.** The **incident** must take place in the **policy territory**.

Form 26800(7-05), pgs. 6-7.

<div align="center">135.</div>

To the extent that the complaint in the Underlying Lawsuit does not allege a "bodily injury", "property damage", "personal injury" or "advertising injury" caused by an "incident", as those terms are defined in the policy, no coverage may exist under the Umbrella Policy. Furthermore, to the extent that, prior to the Umbrella Policy's inception, the Association possessed knowledge that any alleged "bodily injury" or "property damage" occurred, then no coverage exists. Likewise, if the

alleged offense was committed before the Umbrella Policy's inception, then no coverage exists.

<center>136.</center>

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

<center>137.</center>

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability or damages that may be incurred by the Association in the Underlying Lawsuit because there is no qualifying occurrence and the Association had knowledge of the alleged offenses in the Underlying Lawsuit prior to the Umbrella Policy's inception date.

<center>**Twelfth Claim for Relief**</center>

<center>138.</center>

Auto-Owners reiterates paragraphs 1 through 137 as if fully set forth herein.

<center>139.</center>

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore,

<center>64</center>

Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against it in the Underlying Lawsuit.

140.

Specifically, the Umbrella Policy contains the following exclusion of coverage:

> **B.** Damages claimed for any loss, cost or expenses incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> **1. Your product**;
>
> **2. Your work**; or
>
> **3. Impaired property**
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Form 26800(7-05), p. 8.

141.

To the extent that any of the damages claimed by the Homeowner Defendants in the in the Underlying Lawsuit fall within Exclusion B. of the Umbrella Policy, no coverage exists for said damages.

142.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

143.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within Exclusion B. of the Umbrella Policy as referenced above in paragraph 140, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

## **Thirteenth Claim for Relief**

144.

Auto-Owners reiterates paragraphs 1 through 143 as if fully set forth herein.

145.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

146.

Specifically, the Umbrella Policy contains the following exclusion of coverage for "personal injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':

> J.1. **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**[7]:
>
> …
>
> d. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**. …
>
> e. At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste.
>
> f. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>
> (1) Any **insured**; or
>
> (2) Any person or organization for whom **you** may be legally responsible.
>
> g. At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the **pollutants** are brought on or to the premises, site, or location in connection with

---

[7] The umbrella policy's definition of "pollutants" is almost identical to the CGL policy's definition.  However, the umbrella policy also identifies "liquids" and "gases" as "pollutants".

such operations by such **insured**, contractor or subcontractor. …

**h.** At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**.

**2.** **Personal injury** or **advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

**3.** Any loss, cost or expense arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

**b.** Claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, this paragraph does not apply to liability for damages because of covered **property damage** that the **insured** would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **suit** by or on behalf of a governmental authority.

Form 26800(7-05), pp. 10-11.

147.

The Homeowner Defendants assert that the Association's acts or omissions

have caused damage to the Homeowner Defendants' property, including but not limited to the depositing of stormwater runoff and loose soil, as well as the discharge of fecal coliforms, into the ground and surface water.  The Homeowner Defendants also allege that the stormwater is "discharging sediments and pollutants onto [Homeowner Defendants'] property".  Ex. "1", ¶ 21.

148.

To the extent that the alleged irritants and contaminants described in the Underlying Lawsuit qualify as "pollutants," the pollution exclusion referenced in Paragraph 146, above, applies to any such damages arising therefrom.

149.

No coverage is owed for any liability against the Association that comes within the pollution Exclusion J. contained in the Umbrella Policy and referenced in paragraph 146 above, including, but not limited to, any punitive damages that may be sought against the Association, which, if awarded, would necessarily be based on conduct that falls within the pollution exclusion.

150.

A controversy of judiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

151.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within the pollution liability exclusion, as set forth in the Umbrella Policy and referenced in paragraph 146 above, including, but not limited to, any punitive damages that may be sought against the Association in the Underlying Lawsuit.

**Fourteenth Claim for Relief**

152.

Auto-Owners reiterates paragraphs 1 through 151 as if fully set forth herein.

153.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against it in the Underlying Lawsuit.

154.

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

> **M. Bodily injury** or **property damage** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

Form 26800(7-05), p. 12.

155.

The Homeowner Defendants' Second Amended Complaint alleges that the Association was "specifically instructed" by the Homeowner Defendants to stop the flooding of the Homeowner Defendants' property, "but [the Association] failed and refused to abate such conduct."  Ex. "2", ¶ 89.

156.

Additionally, the Homeowner Defendants assert a claim for attorneys' fees, based on the Association's allegedly causing unnecessary trouble and expense.

157.

To the extent that any of the damages claimed by the Homeowner Defendants in the Underlying Lawsuit fall within Exclusion M. of the Umbrella Policy cited in Paragraph 154 above, no coverage exists for said damages.

158.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

159.

Accordingly, Auto-Owners seeks a declaration that no indemnification or

duty to defend is owed by Auto-Owners to the Association for any liability that may come within Exclusion M. of the Umbrella Policy.

### Fifteenth Claim for Relief

160.

Auto-Owners reiterates paragraphs 1 through 159 as if fully set forth herein.

161.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

162.

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

> **Q.** **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> **1.** Assumed in a contract or agreement that is an **insured contract**, provided such **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement.  However, if the insurance under this policy does not apply to the liability of the **insured**, it also does not apply to such liability assumed by the **insured** under an **insured contract**; or

**2.** That the **insured** would have in the absence of the contract or agreement.

Form 26800(7-05), p. 12.

163.

To the extent that the damages at issue in the Underlying Lawsuit arise out of the alleged contractual liability of the Association, Exclusion Q. of the Umbrella Policy bars coverage.

164.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

165.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that may come within the Exclusion Q. of the Umbrella Policy.

## Sixteenth Claim for Relief

166.

Auto-Owners reiterates paragraphs 1 through 165 as if fully set forth herein.

167.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

<div align="center">168.</div>

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

**R.  Personal injury** or **advertising injury;**

    **1.** Caused by or at the direction of any **insured** with the knowledge that the act would violate the rights of another and would inflict **personal injury** or **advertising injury**; or

    **2.** Expected or intended by any **insured**.  This exclusion **R.2.**, does not apply to **personal injury**.

Form 26800(7-05), p. 12.

<div align="center">169.</div>

To the extent that any alleged damages at issue in the Underlying Lawsuit fall within Exclusion R. of the Umbrella Policy, coverage is barred for said damages.

<div align="center">170.</div>

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights

and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

<div align="center">171.</div>

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that falls within Exclusion R. of the Umbrella Policy.

<div align="center">**Seventeenth Claim for Relief**</div>

<div align="center">172.</div>

Auto-Owners reiterates paragraphs 1 through 171 as if fully set forth herein.

<div align="center">173.</div>

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

<div align="center">174.</div>

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

> **W.  Personal injury** or **advertising injury** arising out of any incident first committed before the beginning of the policy term.

Form 26800(7-05), p. 13.

175.

To the extent that any alleged damages at issue in the Underlying Lawsuit fall within Exclusion W. of the Umbrella Policy, coverage is barred for said damages.

176.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

177.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that is barred from coverage by Exclusion W. of the Umbrella Policy.

**Eighteenth Claim for Relief**

178.

Auto-Owners reiterates paragraphs 1 through 177 as if fully set forth herein.

179.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

180.

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

**Y.** **Property damage** to:

    **1.** Property **you**:

        **a.** Own, including any cost or expense incurred by **you**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to another's property; …

    **2.** Property that any of **your**:

        **a.** Employees;

        **b.** Volunteer workers;

        **…**

    Own, rent, occupy or use.  However, this exclusion, **Y.2.**, shall not apply to **your** liability for damage to such property.

    **3.** Premises **you** shall give away or abandon, if the **property damage** arises out of any part of those premises; …

    **6.** That particular part of real property on which any **insured** or any contractor or subcontractor working directly or indirectly on **your** behalf are performing operations, if **property damage** arises out of those operations; or

**7.** That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

This exclusion does not apply with respect to:

**a. Y.3.**, if the premises are **your work** and were never occupied, rented or held for rental by **you**;

**b. Y.4.**, **5.**, **6.**, and **7.** to liability assumed under a sidetrack agreement; or

**c. Y.7.** to **property damage** included in the **products-completed operations hazard**.

Form 26800(7-05), pp. 13-14.

181.

To the extent that any alleged damages at issue in the Underlying Lawsuit fall within Exclusion Y. of the Umbrella Policy, coverage is barred for said damages.

182.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

183.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that is barred from coverage by Exclusion Y. of the Umbrella Policy.

## Nineteenth Claim for Relief

### 184.

Auto-Owners reiterates paragraphs 1 through 183 as if fully set forth herein.

### 185.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

### 186.

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

> **AA. Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

Form 26800(7-05), p. 14.

### 187.

To the extent that any of the alleged damages at issue in the Underlying Lawsuit fall within Exclusion AA. of the Umbrella Policy, coverage is barred for said damages.

### 188.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

189.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that is barred from coverage by Exclusion AA. of the Umbrella Policy.

## Twentieth Claim for Relief

190.

Auto-Owners reiterates paragraphs 1 through 189 as if fully set forth herein.

191.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

192.

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

**BB. Property damage** to **impaired property** or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**;

2. A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

Form 26800(7-05), p. 14.

### 193.

To the extent that any of the alleged damages at issue in the Underlying Lawsuit fall within Exclusion BB. of the Umbrella Policy, coverage is barred for said damages.

### 194.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

### 195.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that is barred from coverage by Exclusion BB. of the Umbrella Policy.

## **Twenty-First Claim for Relief**

### 196.

Auto-Owners reiterates paragraphs 1 through 195 as if fully set forth herein.

### 197.

The Umbrella Policy issued by Auto-Owners to the Association does not provide coverage for the Underlying Lawsuit against the Association, and, therefore, Auto-Owners has no duty to defend or indemnify the Association for the claims asserted against the Association in the Underlying Lawsuit.

### 198.

Specifically, the Umbrella Policy contains the following exclusion of coverage for:

**DD.1.** Punitive or exemplary damages, except to the extent that coverage is provided in any **scheduled or underlying insurance** shown in the Declarations under the Schedule of Underlying Insurance provided such coverage is maintained:

**a.** At the agreed liability limits shown in the Schedule of Underlying Insurance; and

**b.** In accordance with the **Maintenance of Underlying Insurance** condition.

**2.** When coverage is afforded for punitive or exemplary damages under this policy;

**a.** Such damages are included with compensatory damages and the limits shown in the Declarations; and

      **b.** Are not to be construed, in any event, as additional amounts of insurance.

Form 26800 (7-05), pp. 14-15.

### 199.

To the extent that any alleged damages at issue in the Underlying Lawsuit fall within Exclusion DD. of the Umbrella Policy, coverage is barred for said damages.

### 200.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the Umbrella Policy determined and avoid the possible accrual of damages.

### 201.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Association for any liability that is barred from coverage by Exclusion BB. as set forth in the Umbrella Policy

## **CONCLUSION**

### 202.

Auto-Owners incorporates herein the allegations contained in Paragraph 1-201 as if set forth fully herein.

### 203.

Based on the allegations set forth above, to the extent there was no "occurrence" as defined in the Policy and as required by the Policy in order to trigger coverage, Auto-Owners asks for a declaration from this Court that there is no coverage under the Policies to indemnify or defend the Defendant Association against the allegations asserted by the Homeowners Defendants in the Underlying Lawsuit.

204.

Based on the allegations set forth above, to the extent the damages sought by the Homeowners Defendants against the Defendant Association constitute "known losses" to the Defendant Association prior to the date the Policies became effective for this coverage period, Auto-Owners asks for a declaration from this Court that there is no coverage under the Policies to indemnify or defend the Defendant Association against the allegations asserted by the Homeowners Defendants in the Underlying Lawsuit.

205.

Based on the allegations set forth above, to the extent the damages sought by the Homeowners Defendants against the Defendant Association constitute damages which were expected or intended from the actions or omissions of Defendant Association, or those acting on its behalf, Auto-Owners asks for a declaration from this Court that there is no coverage under the Policies to indemnify or defend the

Defendant Association against the allegations asserted by the Homeowners Defendants in the Underlying Lawsuit.

206.

Based on the allegations set forth above, Auto-Owners asks for a declaration from this Court that the damages alleged by Homeowners Defendants against Defendant Association do not constitute personal injuries as that term is defined in the Policies and that there is no coverage under the Policies to indemnify or defend the Defendant Association against the allegations asserted by the Homeowners Defendants in the Underlying Lawsuit.

207.

Based on the allegations set forth above, Auto-Owners asks for a declaration from this Court that the Defendant Association did not satisfy the preconditions to coverage such as providing timely notice of the incidents which are the subject of the Underlying Lawsuit to Auto-Owners and therefore Auto-Owners is relieved from indemnifying and defending Defendant Association in the Underlying Lawsuit.

208.

Based on the allegations set forth above, Auto-Owners asks for a declaration from this Court that the damages alleged by Homeowners Defendants against Defendant Association fall within the Pollution exclusions of the Policies and therefore there is no coverage under the Policies to indemnify or defend the

Defendant Association against the allegations asserted by the Homeowners Defendants in the Underlying Lawsuit.

<div align="center">209.</div>

**WHEREFORE,** Auto-Owners prays:

a.   That this Court enter a Declaratory Judgment declaring that Auto-Owners has no duty to defend or indemnify Defendant Association under the aforementioned contracts of insurance for any claims made against the Association in the Underlying Lawsuit;

b.   That Auto-Owners be awarded its costs in this action;

c.   That this Court award such other and further relief as this Honorable Court may deem proper under the circumstances; and

d.   That process and summons be issued to all Defendants herein and that service on the Defendants be had as required by law.

Respectfully submitted this 2nd day of December, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Jessica M. Phillips*
Jessica M. Phillips
Georgia Bar No. 922902

*/s/ Melissa K. Kahren*
Melissa K. Kahren
Georgia Bar No. 527406

*/s/ Casey L. Smartt*
Casey L. Smartt

Georgia Bar No. 200534
*Attorneys for Plaintiff*

1355 Peachtree Street, N.E.
Suite 300
Atlanta, GA 30309
404-874-8800
Jessica.Phillips@swiftcurrie.com
Melissa.Kahren@swiftcurrie.com
Casey.Smartt@swiftcurrie.com