**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

AUTO-OWNERS INSURANCE COMPANY,

        Plaintiff,

      v.

TABBY PLACE HOMEOWNERS
ASSOCIATION, INC., et al.,

        Defendants.

CIVIL ACTION NO.: 4:21-cv-346

## O R D E R

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Defendant Tabby Place Homeowners Association, Inc. (the "HOA"), its insured, in a lawsuit against the HOA currently being litigated in Glynn County Superior Court.  (Doc. 1 (original Complaint), doc. 33 (Amended Complaint).)  Presently before the Court is the HOA's Motion to Dismiss or Stay, in which it principally argues that the Court should abstain from issuing a declaratory judgment in this matter because of the pending action in Glynn County.  (Doc. 40.)  Also before this Court is Defendants Gayle Baker, Donald Brunelle, Judith Brunelle, Jane Fraser, Burke McCall Harrison, Vicki Harrison, John Lijoi, Judith Phillips, Robert Williamson, and Renee Williamson's (collectively the "Property Owners") Motion to Dismiss.  (Doc. 36).  Therein, the Property Owners argue that Auto-Owners' request for a declaratory judgment is unripe to the extent it is based on the duty to indemnify.  (Id.)  The issues have been fully briefed.  (Id.; docs. 30, 39, 40, 41, 43, 48.)  For the following reasons, the Court **DENIES** the HOA's Motion to Dismiss or Stay, (doc. 40), and **DENIES** the Property Owners' Motion to Dismiss, (doc. 36).

## BACKGROUND

I.    **The Property Owners' Pending Action Against the HOA in Glynn County Superior Court**

The Property Owners own real property that is adjacent to and downgradient of the Tabby Place and Captain's Cove Subdivisions (the "Subdivisions") on St. Simons Island.  (Doc 33-1, p. 2; doc. 33-2, p. 4.)  According to the Property Owners, the Tabby Place Subdivision ("Tabby Place") is a residential development which contains a drainage system that utilizes storm pipes and three retention ponds to collect storm water runoff.  (Doc. 33-2, p. 5.)  In 2019, the Property Owners filed a lawsuit (the "Underlying Action") in Glynn County Superior Court against the owners, developers, and homebuilders of the Subdivisions, alleging that the design, construction, use, and maintenance of retention ponds and other storm water maintenance systems for the Subdivisions had caused flooding and otherwise damaged their property.[1]  (Doc. 33, pp. 6–7; doc. 38, p. 3; see also doc. 33-1, pp. 2–3, 4; doc. 33-2, p. 4.)  In February 2021, after ownership of Tabby Place was transferred to the HOA,[2] the Property Owners filed a second amended complaint ("the State Complaint") adding the HOA as a defendant in the Underlying Action.  (Doc. 33, pp. 5–6, 8–9; doc. 33-1, p. 3; see doc. 33-2, pp. 2, 7.)  In the State Complaint, the Property Owners allege that the HOA's "water systems are designed to infiltrate storm water into the ground through retention ponds, which have caused high groundwater levels.  Consequently, storm water infiltration is causing flooding of [the Property Owners'] [p]roperty after heavy rainfall."  (Doc. 33-2, p. 4.)  The State Complaint also alleges that the HOA has "caused and continue[s] to cause

---

[1]  The Underlying Action is captioned <u>Baker, et al. v. Olde Plantation Group, LLC, et al.</u>, No. CE19-00671 (Glynn Co. Sup. Ct.). (<u>See</u> docs. 33-1, 33-2.)

[2]  On September 14, 2020, Olde Plantation Group, LLC, which is also a defendant in the Underlying Action, transferred two tracts of Tabby Place by quitclaim deed to the HOA, including the retention ponds located thereon.  (Doc. 33, pp. 8–9; <u>see also</u> doc. 33-1, p. 3; doc. 33-2, pp. 7–8.)

storm water to be repeatedly collected, concentrated, and infiltrated into the ground, which causes flooding of [the Property Owners'] [p]roperty." (Id. at p. 11.) This flooding allegedly has caused some of the Property Owners' on-site sewage systems to short-circuit, leading to sanitary discharges (such as fecal coliform) entering the Subdivisions' ground and surface waters. (Id.) Additionally, the Property Owners allege that "the increased volume of storm water [is] discharging sediments and pollutants onto" their property because the storm water "washes over the loose soil on . . . construction sites, along with various materials and products being stored [there]." (Id. at pp. 4, 12.) Moreover, the State Complaint alleges that the HOA has failed to maintain the retention ponds and that the flooding is exacerbated by the HOA's alleged decision to "change[] the permeable ground cover to impervious services without adequately containing the resulting increased storm water runoff." (Id. at p. 11.) Based on these and other allegations, the Property Owners assert the following claims against the HOA: nuisance, trespass, negligence, negligence per se, riparian rights, and unjust enrichment. (Id. at pp. 13–16.) The Property Owners also request injunctive relief and attorneys' fees and costs. (Id. at pp. 16–17.)

## II.     The HOA's Insurance Policies with Auto-Owners

In April 2019, Auto-Owners issued two insurance policies to the HOA: (1) a Commercial General Liability Policy (the "CGL Policy") and (2) a Commercial Umbrella Policy (the "Umbrella Policy," and collectively with the CGL Policy, "the Policies").[3] (Doc. 33, pp. 10, 24; doc. 33-4, p. 2; doc. 33-7, p. 2.) The CGL Policy provides that Auto-Owners "will pay those sums that [the HOA] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies," as well as "personal and advertising injury to which this insurance

---

[3] The Policies had an effective date of April 5, 2019, through April 5, 2020. (Doc. 33, ¶¶ 29, 47; see doc. 33-4, p. 2; doc. 33-7, p. 2.) Auto-Owners renewed each of the policies in 2020 and 2021, such that the HOA was covered under both policies through at least April 5, 2022. (Doc. 33, pp. 10–12, 24–25; see also doc. 33-5, p. 2; doc. 33-6, p. 11; doc. 33-8, p. 10; doc. 33-9, p. 14.)

applies." (Doc. 33, pp. 12, 19; <u>see also</u> doc. 33-6, pp. 26, 30.)  However, the CGL policy only

covers "property damage" that "occurs during the policy period and was not, prior to the policy

period, known to have occurred by" the insured.  (<u>See</u> doc. 33-6, p. 26.)  The Umbrella Policy

provides that Auto-Owners "will pay those sums included in ultimate net loss that the insured

becomes legally obligated to pay as damages because of . . . property damage . . . to which this

insurance applies caused by an incident." (Doc. 33, pp. 25–26; doc. 33-8, pp. 19–20 (emphasis

removed).)  Like the CGL Policy, the Umbrella Policy will not cover "property damage" caused

by an "incident" if the insured knew of its occurrence prior to the policy term.  (Doc. 33, pp. 26–

27; doc. 33-8, p. 20.)  Additionally, the Policies contain various coverage exclusions.  (Doc. 33,

pp. 14–19, 21–23, 29–36; <u>see</u> doc. 33-6, pp. 27–32; doc. 33-8, pp. 21–28.)  For example, the CGL

Policy excludes coverage for "expected or intended injury," "contractual liability," "pollution,"

and damage to certain types of "property." (Doc. 33, pp. 14–19, 21–23, 29–36; <u>see</u> doc. 33-6, pp.

27–29.)  Concerning "pollution," the CGL policy excludes coverage for "'property damage'

arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or

escape of 'pollutants.'" (Doc. 33, pp. 16; <u>see</u> doc. 33-6, p. 27.)

### III.    Auto-Owners' Reservation of Rights

Auto-Owners first received notice of the Underlying Action on March 1, 2021.  (Doc. 33,

p. 9; doc. 38, p. 4; <u>see</u> doc. 33-3, p. 2.)  On March 17, 2021, Auto-Owners sent the HOA a

Reservation of Rights which advised the HOA that "Auto-Owners will provide the HOA with a

defense subject to a reservation of rights." (Doc. 33-3, p. 2.)  The Reservation of Rights states that

Auto-Owners

> expressly reserves all of its rights under the [P]olicies and does not waive any of its rights
> or defenses under the [P]olicies or under applicable law.  Moreover, Auto-Owners reserves
> its right to later disclaim coverage and any duty to defend and/or indemnify the HOA for

all or part of any judgment or settlement that might be obtained against the HOA in the [U]nderlying [Action].

(Id.)   Furthermore, Auto-Owners reiterated that it would provide the HOA a defense in the Underlying Action "pending a resolution of the coverage issues presented in this claim."  (Id. at p. 21.)

## IV.     Procedural History

On December 12, 2021, Auto-Owners brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it has no duty to defend or indemnify the HOA for the claims asserted against it in the Underlying Action.  (Doc. 1 (original Complaint), doc. 33 (Amended Complaint).)   Specifically, Auto-Owners asserts twenty-one "Claims for Relief," asking the Court to declare, *inter alia*, that various exclusions in the Policies preclude coverage for the damages claimed by the Property Owners in the Underlying Action.  (Doc. 33, pp. 37–86.) For example, Auto-Owners' Fourth Claim for Relief states, in relevant part: "[Property Owners] . . . allege that the stormwater is 'discharging sediments and pollutants onto [their] property[.]' . . . To the extent that the alleged irritants and contaminants described in the Underlying [Action] qualify as 'pollutants,' the [CGL Policy's] pollution exclusion . . . applies to any such damages arising therefrom."  (Id. at pp. 47–48 (quoting doc. 33-2, p. 12).)

On February 24, 2022, Property Owners filed a Motion to Dismiss and an Answer to Auto-Owners' Amended Complaint.[4]  (Docs. 36, 38.)   The Property Owners argue that the "Amended

---

[4] Before Auto-Owners filed the Amended Complaint, the Property Owners filed a Motion to Dismiss the original Complaint.  (Doc. 27.)  Under black letter federal law, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted).  This means that "the original pleading is abandoned by the amendment[ ] and is no longer a part of the pleader's averments against his adversary."  Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation omitted); see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (initial pleading "bec[o]me[s] a legal nullity").  To be sure, an original complaint would still have legal effect if "the amendment specifically refers to or adopts the earlier pleading."  Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n.6 (11th Cir.

Complaint seeking a declaration that [Auto-Owners] has no duty to indemnify is premature and should be dismissed." (Doc. 36, p. 2.) Auto-Owners did not file a formal Response to the Property Owners' Motion to Dismiss the Amended Complaint, although it addressed the Property Owners' arguments in briefing on a separate motion.[5] (See doc. 30.) On March 4, 2022, the HOA filed a "Motion to Dismiss or Stay." (Doc. 40.) Therein, the HOA argues that the Court should abstain from issuing a judgment declaring whether the damages alleged in the Underlying Action are excluded from the Policies' coverage based upon the application of the Eleventh Circuit Court of Appeals' "guideposts" in Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328 (11th Cir. 2005). (Id. at pp. 6–14.) Furthermore, the HOA—like the Property Owners—asks the Court to "dismiss or stay this action to the extent it prematurely seeks a declaration of the duty to indemnify." (Id. at pp. 14–15; see doc. 36, p. 2.) Auto-Owners filed a Response to the HOA's Motion to Dismiss, (doc. 41), the HOA filed a Reply, (doc. 43), and Auto-Owners filed a Sur-Reply, (doc. 48).

---

1982) (citation omitted). An amended complaint that does not incorporate the prior pleading, however, moots "the motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded." Wimberly v. Broome, No. 6:15-cv-23, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016) (collecting cases). The Court has reviewed Auto-Owners' Amended Complaint and found no reference to, or adoption of, any allegations set forth in its original Complaint. Therefore, Auto-Owners' Amended Complaint is the sole operative pleading in this case and renders moot Property Owners' first Motion to Dismiss. (Doc. 27.) Accordingly, the initial Motion to Dismiss is **DENIED AS MOOT**. (Id.)

[5] Specifically, Auto-Owners filed a Response to the Property Owners' now-moot Motion to Dismiss the original Complaint. (Doc. 30.) The Property Owners filed a Reply, (doc. 34), and Auto-Owners filed a Sur-Reply, (doc. 39). Notably, the Property Owners' at-issue Motion to Dismiss the Amended Complaint is identical to their Motion to Dismiss the original Complaint. (Compare doc. 36, p. 2, with doc. 27, p. 2.) While the Court does not condone Auto-Owners' failure to file a formal response officially indicating that it opposes the pending Motion to Dismiss, the Court will consider the parties' briefing on the Motion to Dismiss the original Complaint when evaluating the arguments that the Property Owners have raised in the at-issue Motion to Dismiss the Amended Complaint.

**DISCUSSION**

I.     **The Declaratory Judgment Act and District Courts' Discretion to Abstain Under the Brillhart/Ameritas Doctrine**

Auto-Owners seeks relief solely under the Declaratory Judgment Act, which permits federal courts to "declare the rights and other legal relations of any interested party" in a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).  The Declaratory Judgment Act does not bestow an "absolute right upon the litigant" to obtain declaratory relief; rather, it is an "enabling act" which is "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286–87 (1995); see also 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . *may* declare the rights . . . of any interested party seeking such declaration . . . .") (emphasis added).  Stated differently, the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas, 411 F.3d at 1330 (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)).  "Accordingly, given the 'nonobligatory nature of the remedy[,]' a district court may, 'in the sound exercise of its discretion,' decide to 'dismiss an action seeking a declaratory judgment.'" Cont'l Cas. Co. v. Wheeler Cnty. Bd. of Educ., No. 3:06-cv-047, 2007 WL 9702383, at *2 (S.D. Ga. Jan. 3, 2007) (quoting Wilton, 515 U.S. at 286).

In Brillhart v. Excess Insurance Company of America, the Supreme Court discouraged federal courts from exercising jurisdiction over declaratory judgment actions when "another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495.  The Court recognized that doing so would be "uneconomical as well as vexatious for a federal court," and further warned against "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." Id.  The Court then provided

guidance for courts determining whether to abstain from hearing a declaratory judgment action, suggesting, for instance, that such courts consider "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under applicable substantive law, can better be settled in the proceeding pending in the state court." Id.

In Ameritas Variable Life Insurance Company v. Roach, the Eleventh Circuit supplemented Brillhart's guidance by providing nine non-exhaustive factors or "guideposts" to assist courts in deciding whether to abstain from issuing declaratory relief.[6]  411 F.3d at 1331. The Eleventh Circuit intended the list to "aid district courts in balancing state and federal interests," and it stated that the guideposts incorporate "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision . . . to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." Id.  However, no single guidepost is determinative, and courts need not apply each guidepost.  Id. Rather, courts must determine whether abstention is warranted given the "totality-of-the

---

[6]  The "guideposts" are:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas, 411 F.3d at 1331.

circumstances." Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc., 12 F.4th 1278, 1285 (11th Cir. 2021).

After Ameritas was published, some courts in this Circuit interpreted it as being applicable only in cases where the underlying proceeding was "parallel"—i.e., where the parties and underlying issues were substantially similar or identical. See, e.g., James River Ins. Co. v. Ultratec Special Effects, Inc., No. 5:16-cv-00949-AKK, 2017 WL 2652985, at *1 n.2 (N.D. Ala. June 20, 2017) ("The court will not analyze the Ameritas factors in light of its finding that this litigation is not parallel to the state actions."); Amerisure Mut. Ins. Co. v. Plantation Key Off. Park, LLLP, No. 11-60136-CIV, 2011 WL 2436693, at *3 (S.D. Fla. June 14, 2011) ("[A] court does not reach the Ameritas analysis unless it determines first that the parties and issues in the federal and state actions are sufficiently similar that they are parallel."). Indeed, some courts determined that they lacked discretion to abstain from issuing declaratory relief under Brillhart in non-parallel proceedings. See, e.g., Title Pro Closings, L.L.C. v. Tudor Ins. Co., 840 F. Supp. 2d 1299, 1305 (M.D. Ala. 2012) ("Here, there is no pending declaratory judgment action in the underlying suit, nor are the parties the same. . . . The case thus falls outside of Brillhart's reach."); Utica Mut. Ins. Co. v. Dean & Moore Ins., Inc., No. 1:10-CV-1792-HTW, 2011 WL 13272690, at *6 (N.D. Ga. Mar. 29, 2011) ("The court finds that there is no parallel State court proceeding to justify abstention by this court.").

However, in an unpublished opinion in First Mercury Insurance Co. v. Excellent Computing Distributors, Inc., the Eleventh Circuit stated:

> [W]e have never held that the Ameritas factors apply only when reviewing parallel actions. Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors . . ., even [if] the state and federal actions [are] not parallel.

648 F. App'x 861, 866 (11th Cir. 2016). Furthermore, to eliminate any doubt as to _Ameritas'_ applicability in non-parallel proceedings, the Eleventh Circuit held just last year that "the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under [the Declaratory Judgment Act]." _S. Heating & Cooling Inc._, 12 F.4th at 1284. Thus, "a district court may exercise its discretion and decline to adjudicate a claim under the Declaratory Judgment Act even in the absence of parallel proceedings." _Id._ at 1284–85. Notwithstanding, the Eleventh Circuit emphasized that "the degree of similarity between the proceedings [remains] significant[;] . . . the greater the difference between concurrent proceedings, the less likely refusing to exercise jurisdiction will further the principles of wise judicial administration, federalism, comity, and avoidance of duplicative and officious federal proceedings." _Id._ at 1285. Accordingly, district courts must "take[] into account the similarity between any concurrent proceedings in its totality-of-the-circumstances analysis under _Ameritas_."[7] _Id._

## II.    Abstention under _Brillhart_/_Ameritas_ Is Not Appropriate

The HOA argues that the "[a]pplication of the factors set out in _Ameritas_ and the case law demonstrate that abstention is warranted here." (Doc. 40, pp. 6–9, 12–14.) Focusing mainly on the fifth, seventh, and eighth factors, the HOA primarily contends that the Court should abstain from making any coverage determinations because "there is significant overlap in the facts at issue in the two actions, which present novel questions of Georgia insurance coverage law and which the state court is in a better position to address." (Doc. 43, p. 5.) Auto-Owners, on the other hand, contends that "applying the _Ameritas_ factors shows that this Court should not abstain from deciding the coverage matters before it." (Doc. 41, p. 11.) Although Auto-Owners addresses all the _Ameritas_ factors, its central argument is that abstention is inappropriate since the factual and

---

[7] In light of this case law, Auto-Owners' contention that the HOA's Motion "should be denied [merely] as the cases are not parallel" is untenable. (Doc. 41, p. 8; _see also_ _id._ at pp. 3–5.)

legal issues relevant to determining whether the Policies' coverage exclusions apply in this case are "entirely distinct" from determining the HOA's liability for the Property Owners' claims in the Underlying Action.  (Id. at pp. 2, 7–11; see also doc. 48, pp. 8–9.)

As discussed below, Auto-Owners has the better of the argument, and, based on a totality-of-the-circumstances analysis under Ameritas, the Court finds that it need not abstain from addressing Auto-Owners' claims for declaratory relief.

**A.    The Lack of Similarity Between this Case and the Underlying Action Cuts Against Abstention.**

As noted above, the similarity between the concurrent proceedings is a "significant" consideration which is "encompassed by the relevant Ameritas guideposts, and[,] [therefore,] . . . is granted weight in the balancing of those guideposts."  S. Heating & Cooling Inc., 12 F.4th at 1286; see also 17A Charles Alan Wright et al., Federal Practice and Procedure § 4247 n.5 (4th ed. 2021) ("[T]he substantial similarity of the issues in the state and federal proceedings is . . . one factor in the Brillhart analysis.").  "[T]o appropriately assess the degree of similarity between concurrent state and federal proceedings, a district court needs to look at the cases as a whole." James River Ins. Co. v. Rich Bon Corp., 34 F.4th 1054, 1061 (11th Cir. 2022) (internal quotations omitted).

There are significant dissimilarities between this case and the Underlying Action, suggesting that abstention is not warranted here.  Although these cases arise from the same incident—the alleged flooding and contamination of the Property Owners' property due to excessive storm water infiltration—and include some of the same parties, the central disputes (and facts relevant to their resolution) are distinct.  In the Underlying Action, the Property Owners assert ordinary state law tort claims (nuisance, trespass, negligence, and negligence per se) and a property claim (violation of riparian rights under O.C.G.A. § 44-8-1) against the HOA and other defendants.

(Doc. 33-2, pp. 13–16.)  Auto-Owners is not a party to that suit.  (See doc. 33-2).  Although the Property Owners' state causes of action are distinct, the crux of their claims is that the HOA is responsible for the excessive flooding that has allegedly damaged and interfered with the use and enjoyment of their property.  (See generally id. at pp. 13–16.)  This action, in contrast, as the HOA concedes, "do[es] not address the broader issues regarding [the] HOA's alleged liability to the Property Owners."  (Doc. 40, p. 13.)  Rather, it merely turns on "the interpretation of an insurance contract and the issue of whether [the HOA] may claim coverage under the subject Polic[ies]."  S.-Owners Ins. Co. v. Galati Yacht Sales, LLC, No. 8:21-cv-2567-VMC-SPF, 2022 WL 1453480, at *4 (M.D. Fla. May 9, 2022).  More specifically, Auto-Owners asks the Court to declare that it owes no duty to defend or indemnify the HOA in the Underlying Action because the Property Owners' claimed damages are excluded under various provisions of the Policies.  (See doc. 33, pp. 37–86.)  "Federal district courts routinely issue declaratory judgments about liability insurers' duties to defend and indemnify against the claims in an underlying state tort lawsuit."  S. Heating & Cooling Inc., 12 F.4th at 1290 (Brasher, J., concurring).  Moreover, the Property Owners' State Complaint in the Underlying Action mentions neither Auto-Owners nor the Policies, (see doc. 33-2), and there is no indication in the record that "coverage issues have been joined in the Underlying Action."  Essex Ins. Co. v. Foley, No. 10-0511-WS-M, 2011 WL 290423, at *2 (S.D. Ala. Jan. 27, 2011).  As such, it is highly unlikely that "[t]he fact finder in the Underlying Action will make [any] conclusive determinations about . . . whether [the Property Owners'] claims against [the HOA] lie within the scope of the Polic[ies]," or whether Auto-Owners has a duty to defend or indemnify the HOA.  Id.

The foregoing considerations weigh strongly against a dismissal or stay of the present action.  See N. Assur. Co. of Am. v. Custom Docks by Seamaster, Inc., No. 8:10-CV-1869-T-

27MAP, 2011 WL 117046, at *2 (M.D. Fla. Jan. 13, 2011) (declining to dismiss declaratory judgment action under Ameritas because defendants failed to adequately demonstrate that the underlying state proceeding would determine whether the plaintiff-insurer was required to defend or indemnify its insured, the insurance coverage issue was not before the state court in the underlying action, and the insurer was not a party to the state action); see also S.-Owners Ins. Co, 2022 WL 1453480, at *4 (finding the coverage issue "not sufficiently similar to the Underlying Lawsuit to merit dismissal or a stay,"  because "the essential dispute in each is different," with the state case involving a "classic tort claim" and the declaratory judgment "turn[ing] on the interpretation of an insurance contract"); Cincinnati Ins. Co. v. Thunderbolt Harbour Phase II Condo. Ass'n, Inc., No. 4:14-cv-222, 2015 WL 4075148, at *2 (S.D. Ga. July 1, 2015) ("The underlying lawsuit involves torts . . . .  The only issue in the declaratory judgment action is whether Cincinnati owes a defense or indemnity to Ryan.  Because the two actions do not present the same issues, the existence of the underlying lawsuit does not weigh against the Court's consideration of the declaratory judgment action.  For the same reason, a stay would also be inappropriate.").

**B.    The Seventh and Eighth Ameritas Factors Weigh Against Abstention.**

The HOA argues that abstention is warranted under the seventh and eighth Ameritas factors because this case "will turn on the resolution of factual disputes intertwined with the merits of the [U]nderlying [Action] that the state court is in a better position to address."  (See doc. 40, p. 6.) The seventh and eighth Ameritas factors, ask, respectively, "whether the underlying factual issues are important to an informed resolution of the case" and "whether the state trial court is in a better position to evaluate those factual issues than is the federal court."  Ameritas, 411 F.3d at 1331. The HOA contends that "Auto-Owners seeks to establish that the damages alleged in the state court action constitute 'pollution' excluded from coverage and that [the] HOA knew of these

damages prior to the policy period.  These issues will likely turn on evidence and facts to be determined in the state court action." (Doc. 40, p. 6.)  Auto-Owners, in turn, argues that the seventh and eighth factors do not favor abstention because the facts at issue in the Underlying Action "are unimportant to resolve coverage questions" and the "state trial court will not evaluate the factual issues presented" in this case.  (Doc. 41, pp. 17–18.)  The Court agrees with Auto-Owners.

The HOA overstates the existence of factual overlap between this case and the Underlying Action.  In this case, Auto-Owners asks the court to declare, *inter alia*, that it has no duty to defend or indemnify the HOA in the Underlying Action because the Property Owners' alleged damages fall within the Policies' exclusions for damages caused by "pollution" (the "Pollution Exclusions").  (See doc. 33, pp. 45–49, 57–60, 68–72.)  Auto-Owners also seeks a declaration that the Property Owners' claims are not covered under the Policies' exclusions for damages of which an insured was aware before the policy period began (the "Prior-Knowledge Exclusions," and, collectively with the pollution exclusions, the "Exclusions").  (See id. at pp. 37–41, 63–67.)  The HOA contends that the determination of whether these exclusions apply is sufficiently intertwined with the facts to be determined in the Underlying Action to warrant abstention.  (See doc. 40, p. 6.)  However, the HOA has failed to show how the facts relevant to determining whether the HOA is liable for nuisance, trespass, negligence, or violating riparian rights—issues at the heart of the Underlying Action—are relevant or "important" to evaluating the Exclusions.  Ameritas, 411 F.3d at 1331.  As a preliminary matter, the HOA ignores how this Court would go about adjudicating Auto-Owners' request for a judgment declaring it has no duty to defend the HOA.[8]  In Georgia, an insurer's duty to defend extends to all claims that "potentially or arguably" fall within the policy's coverage, Elan Pharm. Rsch. Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1375 (11th

---

[8]  As discussed in Discussion Section III, infra, the Court will postpone its consideration of whether Auto-Owners owes the duty to indemnify the HOA because that issue is unripe.

Cir. 1998), and "is excused only if the petition unambiguously excludes coverage under the policy." Colony Ins. Co. v. Corrosion Control, Inc., 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005). Therefore, because "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured[,] [Georgia courts] look to the allegations of the complaint to determine whether a claim covered by the policy is asserted." Hartford Cas. Ins. Co. v. Robert P. Copeland, P.C., No. 1:09-CV-2347-ODE, 2010 WL 11479286, at *2 n.2 (N.D. Ga. Aug. 24, 2010) (internal quotations omitted) (quoting Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003)).  This is true even when the state complaint's allegations are "groundless."  Phoenix Ins. Co. v. Robinson Constr. Co., No. 1:20-CV-414-LMM, 2020 WL 5755010, at *3 (N.D. Ga. Aug. 21, 2020) (quoting Great Am. Ins. Co. v. McKemie, 259 S.E.2d 39, 40–41 (Ga. 1979)).  Furthermore, courts analyze an insurer's duty to defend "without making factual determinations" or having to evaluate the credibility of the complaint's allegations. Auto-Owners Ins., Co. v. Hickory Springs Ests. Homeowners Ass'n, Inc., No. 5:08-CV-049(HL), 2008 WL 5381971, at *4 (M.D. Ga. Dec. 23, 2008); see Pa. Nat. Mut. Cas. Ins. Co. v. King, No. 11-0577-WS-C, 2012 WL 280656, at *3–4 (S.D. Ala. Jan. 30, 2012). Therefore, to decide whether Auto-Owners has a duty to defend the HOA in the Underlying Action, the Court simply compares the allegations of the State Complaint against the provisions of the Policies.  Accordingly, the coverage issues in this case do not hinge on the resolution of facts at issue in the Underlying Action.  See Phoenix Ins. Co., 2020 WL 5755010, at *4 ("The resolution of this case—so far as Plaintiffs' duty to defend is concerned—depends upon the allegations of IHI's complaint.  It is by comparing those allegations to the language of the parties' policies that the Court will determine whether Plaintiffs have a duty to defend.  The facts to be developed in discovery are not immediately relevant, and so there is little risk that this case will

duplicate the fact discovery of the IHI litigation."); see also Hickory Springs Ests. Homeowners Ass'n, Inc., 2008 WL 5381971, at *5 ("With respect to the seventh and eighth factors, the underlying factual issues are not important to an informed resolution of this case. . . . [A]n insurer's duty to defend a lawsuit brought against its insured is determined by comparing the language of the insurance contract to the allegations set forth in the complaint, regardless of the truth o[r] falsity of such allegations.").

Even if the scope of the Court's duty to defend inquiry were not so circumscribed, the HOA has failed to identify any facts at issue in the Underlying Action which are important for deciding whether the Policies' Exclusions apply. The HOA maintains that the Court's assessment of the pollution and prior-knowledge exclusions "turn[s] on evidence and facts to be determined" in the Underlying Action, including (1) whether the "infiltration of storm water into the retention ponds raises the groundwater table resulting in 'groundwater mounding' that causes flooding of their properties after rain events," (doc. 40, p. 6), and (2) "the manner in which the defendants' construction activities caused the alleged flooding of the Property Owners' properties," (doc. 43, p. 6). The Court is not persuaded. While determining the cause of the alleged flooding is highly relevant to assessing the HOA's *liability*, the Court fails to see—and the HOA has not explained— how the state court's resolution of that fact would aid the Court in determining whether the Property Owners' alleged damages fall within the Pollution or Prior-Knowledge Exclusions—or, for that matter, any of the other exclusions Auto-Owners contends absolve it from its coverage obligations. In order to determine whether the Pollution Exclusions apply, the Court would have to decide whether the Property Owners' alleged property damage was caused by the discharge of "pollutants," as defined by the Policies. (See doc. 33, pp. 45–49, 68–72; see also doc. 33-6, pp. 27–28 (excluding coverage for "'property damage' arising out of the actual, alleged or threatened

discharge, dispersal, seepage, migration, release or escape of 'pollutants'"); see doc. 33-9, p. 25 ("This policy does not apply to . . . [a]ny claim, suit, action or proceeding against any insured arising out of the discharge, dispersal, release, escape or inhalation of any . . . pollutants . . . .") (emphasis removed).)  Furthermore, for purposes of the Prior-Knowledge Exclusions, the Court would have to determine when the HOA learned about the Property Owners' alleged property damage.  (Doc. 33, pp. 25–27; see doc. 33-6, p. 26 (covering "property damage" only if, "[p]rior to the policy period, no insured . . . knew that . . . [it] had occurred in whole or in part"); doc. 33-9, p. 24 ("This insurance applies to . . . property damage only if . . . [b]efore the beginning of the policy term . . ., none of the following persons knew that . . . [it] had occurred in whole or in part.").  Neither of these inquiries plainly "turn on" or would be aided by a state court's findings concerning the cause of the flooding or the extent to which the construction activities of defendants in the Underlying Action contributed thereto.  (Doc. 40, p. 6.)

Moreover, notably, the HOA has not argued that—much less explained why—a factfinder in the Underlying Action would need to determine whether the at-issue contaminants that were allegedly discharged qualify as "pollutants" under the Policies.  (See docs. 40, 43.)  Indeed, whether a certain substance qualifies as a "pollutant" under an insurance policy exclusion ordinarily is a question of *law* for a court.  See, e.g., Evanston Ins. Co. v. Xytek Tissue Servs., LLC, 378 F. Supp. 3d 1267, 1285–89 (S.D. Ga. 2019); Barrett v. Nat'l Union Fire Ins. Co., 696 S.E.2d 326, 329–31 (Ga. Ct. App. 2010).  Furthermore, the HOA has neither contended nor shown that any of the state law causes of action in the Underlying Action will require a factual determination as to exactly when the HOA learned that the Property Owners had suffered property damage (much less specifically whether the HOA learned of the damage before the beginning of the Policies' terms).  (See docs. 40, 43.)  Such issues seem especially irrelevant here, as the State

Complaint does not mention the Policies (or any of their provisions) and there is no indication in the record that coverage issues have been raised in the Underlying Action.  (See doc. 33-2); see King, 2012 WL 280656, at *3 ("Surely the state-court jury will neither have a copy of the Penn National insurance policy before it, nor be tasked with applying the facts of the King Litigation to coverage provisions in that policy.  After all, no insurance coverage claims or defenses have been joined in the case.").

Based on the forgoing, the seventh and eighth Ameritas factors weigh in favor of adjudicating Auto-Owners' claims for declaratory relief.[9]  See Foremost Ins. Co. Grand Rapids, MI v. Susman, No. 2:20-CV-00095-RWS, 2020 WL 6494196, at *2 (N.D. Ga. Oct. 6, 2020) (declining to abstain from issuing declaratory judgment concerning insurer's duty to defend its insured in state proceedings, in part because "[t]he declaratory judgment action seeks a determination on when the policy took effect, whereas the underlying action addresses issues of negligence"); Nat'l Tr. Ins. Co. v. Taylor & Sons, Inc., No. 3:19-cv-67, 2020 WL 1558108, at *3 (S.D. Ga. Apr. 1, 2020) ("Resolving the issues of fact involved with the tort claims will not resolve the question of whether Plaintiffs in this case—who are not parties to the Superior Court Case— must provide coverage to Wojtanik and Pollack.").

---

[9]  The HOA also argues that "the overlap in factual issues between this action and the [Underlying Action] creates a conflict of interest for Auto-Owners" and is prejudicial to the HOA.  (Doc. 40, pp. 11–12; see also doc. 43, p. 7.)  This argument is undercut by the Court's determination that the facts at issue in the Underlying Action are not pertinent to determining whether the Policies' exclusions apply to the Property Owners' claims.  See Discussion Section II.B, supra.  Additionally, as Auto-Owners points out, the HOA's conflict of interest argument is meritless, as courts in this Circuit "routinely decide[] coverage cases [brought by insurers] while state courts determine [their insureds'] liability."  (Doc. 41, pp. 19); see S. Heating & Cooling Inc., 12 F.4th at 1290 (Brasher, J. concurring).

C.      **The Fifth <u>Ameritas</u> Factor Cuts Against Abstention**

The HOA argues that the fifth factor—"whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction," <u>Ameritas</u>, 411 F.3d at 1331—favors abstention.  (Doc. 40, pp. 7–9.)  According to the HOA, adjudicating Auto-Owners' claims will require the Court "to decide novel insurance coverage issues under Georgia law concerning whether the pollution exclusion applies to the 'groundwater mounding' claims in the [Underlying Action]."[10]  (<u>Id.</u> at p. 8)  Specifically, the HOA argues that "Georgia courts do not appear to have previously addressed whether the pollution exclusion applies to similar allegations of flooding due to high groundwater levels or groundwater mounding."  (Doc. 43, p. 8.)  Therefore, the HOA suggests, adjudicating Auto-Owners' claim that the Pollution Exclusions apply to the Property Owners' claims would "encroach on the authority of Georgia courts to make pronouncements of Georgia law."  (Doc. 40, p. 9.)  The Court disagrees.  "Federal courts routinely decide novel state-law issues in diversity actions," <u>S. Heating and Cooling, Inc.</u>, 12 F.4th at 1289, and the Court is not prohibited from doing so merely because Georgia courts have (unsurprisingly) not yet addressed whether the Pollution Exclusions bar coverage for the precise damages alleged in the Underlying Action.  Additionally, as noted above, there is no risk of inconsistent rulings on this issue because it is not before the state court; the State Complaint does not refer to the Policies or their Exclusions and there is no indication that a factfinder would be tasked with deciding whether the Property Owners' claims fall within the

---

[10]  The HOA also cites the potential for "inconsistent factual records" and "overlapping factual questions" as bases for friction.  (Doc. 40, pp. 7–8; doc. 43, p.  6.)   This argument fails based on the Court's analysis with respect to the seventh and eighth <u>Ameritas</u> factors.  <u>See</u> Discussion Section II.B, <u>supra</u> (finding, *inter alia*, that the risk of duplicative or inconsistent factual findings is low here because (1) an insurer's duty to defend is assessed primarily by comparing the complaint's allegations and the applicable policy's language and (2) Defendants failed to identify facts pertinent to evaluating the coverage issues in this case which are *also* material to determining the HOA's liability in the Underlying Action).

Policies' terms.  Hickory Springs Ests. Homeowners Ass'n, Inc., 2008 WL 5381971, at *4 ("The issue of insurance coverage is not currently pending in the underlying state court action, thus obviating concerns of federalism, comity or gratuitous interference with state court proceedings."). Thus, the fifth Ameritas factor does not weigh in favor of abstention.

> **D.    The Second and Third Ameritas Factors Favor Retaining Jurisdiction over this Action.**

The second and third factors ask, respectively, "whether the judgment in the federal declaratory action would settle the controversy" and "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue."  Ameritas, 411 F.3d at 1331. Concerning the second factor, the HOA appears to argue that "a judgment in this declaratory judgment action would not settle the controversy" because it will not resolve the issue of the HOA's liability in the Underlying Action.  (See doc. 40, p. 12.)  "[A]lthough a declaratory judgment will not settle the [Underlying Action], neither will it impede its resolution."  Taylor & Sons, Inc., 2020 WL 1558108, at *3.  Additionally, as Auto-Owners correctly notes, issuing the declaratory relief it seeks will "completely settle the *insurance coverage* controversy," Great Am. Ins. Co. v. Lorch, No. 1:12-cv-3479-MHS, 2013 WL 12062839, at *5 (N.D. Ga. May 2, 2013) (emphasis added).  (See doc. 41, pp. 13–14.)  Consequently, a judgment in this action also would clarify the legal relations between the parties because it would determine whether Auto-Owners has a duty to defend or indemnify the HOA.  King, 2012 WL 280656, at *4 ("[T]his declaratory judgment action would be of tremendous value in clarifying legal relations among the parties, by resolving the parties' disagreement as to whether Penn National does or does not owe Treasure Coast and the County a defense in the state-court suit.").

Accordingly, the Court finds that the second and third factors weigh in favor of adjudicating Auto-Owners' claims.  See Hickory Springs Ests. Homeowners Ass'n, Inc., 2008 WL

5381971, at *4 ("[I]t can not be reasonably disputed that the federal declaratory judgment action would . . . both 'settle the controversy' and 'serve a useful purpose in clarifying the legal relations' surrounding insurance coverage.").

**E.    The First and Ninth Ameritas Factors are Neutral.**

The first Ameritas factor considers "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts."  Ameritas, 411 F.3d at 1331. The ninth Ameritas factor asks "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action."  Id.  Neither of these factors weigh heavily in favor of or against abstention in this case.  The HOA correctly argues that Georgia has at least some interest in deciding the issues raised in this case because the HOA is a Georgia corporation, the Policies were issued in Georgia, and the Property Owners' claims arise out of alleged property damage to real property located in this state.  (Doc. 40, pp. 13–14); see S. Heating & Cooling Inc., 12 F.4th at 1288 (district court did not err in concluding that Alabama had a compelling interest in deciding issues raised in declaratory judgment action because "Southern Heating is an Alabama company, the underlying insurance policy was issued in Alabama, and the decedents were Alabama residents").  Furthermore, the parties agree that Georgia law governs the interpretation of the Policies, (doc. 40, p. 14; see doc. 41, p. 12), and courts have found a state's interest to be "considerable" where its law governs the interpretation of the contract at issue.  Wheeler Cnty. Bd. of Educ., 2007 WL 9702383, at *3; see also Frankenmuth Mut. Ins. Co. v. Horne, No. 1:19-CV-91 (LAG), 2019 WL 9852884, at *2 (M.D. Ga. Nov. 7, 2019) ("Georgia law governs the interpretation of the contract.  As a result, . . . Georgia has a strong interest in having the issues raised decided in its state courts.").  At the same time, this Court has previously recognized that

"Georgia does not have any particular interest in interpreting the insurance policies at issue" in declaratory judgment actions, such as the present one, where the plaintiff-insurer argues it has no duty to defend or indemnify its insured. Taylor & Sons, Inc., 2020 WL 1558108, at *3. This is particularly true here, where the Policies' Exclusions are only at issue in this federal suit. See Phila. Indem. Ins. Co. v. AGCO Corp., No. 1:10-CV-4148-TWT, 2011 WL 2652139, at *3 (N.D. Ga. July 6, 2011) ("Georgia does not have a particularly strong interest in deciding the coverage issues properly and exclusively before a federal court."). Additionally, although federal substantive law is not directly implicated here, "[f]ederal courts long have held that an insurance company seeking determination of its liabilities under an insurance contract could utilize the Declaratory Judgment Act for such a purpose." Brockwell v. Metro. Life Ins. Co., 409 F. Supp. 3d 1360, 1364 (S.D. Ga. 2019). Thus, the Court finds that the first and ninth factors do not cut significantly in favor of or against abstention.

**F.   The Fourth and Sixth Factors Do Not Favor Abstention.**

The fourth and sixth Ameritas factors consider, respectively, "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable," and, "whether there is an alternative remedy that is better or more effective." Ameritas, 411 F.3d at 1331. Concerning the fourth factor, there is no indication that Auto-Owners is seeking a declaratory judgment for *res judicata* purposes. As noted above, the Court need not make factual determinations in order to decide whether Auto-Owners has a duty to defend the HOA in the Underlying Action; rather, it must simply compare the state complaint's allegations with the Policies' terms to determine whether the Property Owners' claims in the Underlying Action are covered. Hartford Cas. Ins. Co., 2010 WL 11479286, at *2, n.2; see Discussion Section II.B.,

supra.  Additionally, the Court need not—and, indeed, given the differing subject matter of the two lawsuits, will not—make factual findings that bear upon the HOA's liability for the acts alleged in the Underlying Action.  Thus, to the extent the HOA contends that the factual findings of this court would have *res judicata* effect on the Underlying Action, that position is untenable "because Auto-Owner's duty to defend can be analyzed without making factual determinations." Hickory Springs Ests. Homeowners Ass'n, Inc., 2008 WL 5381971, at *4.

Concerning the sixth factor, the HOA has not identified an alternative that is equal to or better than this action for determining whether Auto-Owners has a duty to defend and/or indemnify the HOA in the Underlying Action.  Conceivably, Auto-Owners could request a declaratory judgment from the state court pursuant to O.C.G.A. § 9-4-2, which authorizes the issuance of declaratory judgments "[i]n cases of actual controversy."  O.C.G.A. § 9-4-2.  The state court could either stay the Underlying Action and hear separately the duty to defend issue or address it separately after the HOA's liability is determined at trial.  However, "[u]nder any of the alternatives, whether the issue is decided in the [U]nderlying [A]ction or in the present action, the litigation would [be] piecemeal, thus considerations of judicial economy do not favor abstention." Hickory Springs Ests. Homeowners Ass'n, Inc., 2008 WL 5381971, at *4.

In light of the forgoing, because the balance of the Ameritas factors and the totality of circumstances weigh in favor of adjudicating Auto-Owners' claims for declaratory relief, the Court declines the HOA's request to abstain from addressing said claims.  Accordingly, the HOA's Motion to Dismiss must be denied.  (Doc. 40.)

**III.    Auto-Owners' Duty to Indemnify is Not Ripe for Adjudication**

Defendants also request the dismissal of Auto-Owners' claims for declaratory relief to the extent they are based upon the duty to indemnify on the ground that the duty to indemnify issue is unripe.  (Doc. 36, p. 2; doc 40, pp. 14–15.)  "Under Georgia law, the duty to defend and the duty to indemnify are separate and independent obligations."  Auto-Owners Ins. Co. v. Devore, No. 1:21-cv-75, 2021 WL 5856145, at *1 (S.D. Ga. Dec. 8, 2021); see Penn-America Ins. Co. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. Ct. App. 1997).  Indeed, in cases involving insurance coverage, courts treat these duties differently and address them separately.  State Farm Fire & Cas. Co. v. Myrick, No. 206-cv-359-WKW, 2007 WL 3120262, at *2 (M.D. Ala. Oct. 23, 2007).  "The duty to defend is broad and determined solely by comparing the insurance policy to the complaint against the insured."  Sparta Ins. Co. v. Guardian Servs., Inc., No. 1:19-cv-260-TFM-N, 2020 WL 9814218, at *6 (S.D. Ala. Mar. 19, 2020) (citing EmbroidMe.com, Inc. v. Travelers Cas. Co. of Am., 845 F.3d 1099, 1107 (11th Cir. 2017)).  Therefore, as in this case, "a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated."  Myrick, 2007 WL 3120262, at *2.  In contrast, the duty to indemnify is determined "by the underlying facts adduced at trial or developed through discovery during the litigation."  Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1324 (11th Cir. 2014) (internal quotations omitted).  Thus, numerous courts have held that "[a]n insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit."  Auto-Owners Ins. Co. v. Deerlake Homeowners Ass'n, Inc., No. 2:11-CV-215-RWS, 2012 WL 1038748, at *3 (N.D. Ga. Mar. 27, 2012); see Progressive Mountain Ins. Co. v. R.W. Womack & Sons, Inc., No. 1:11-cv-159, 2012 WL 12929724, at *2 (S.D. Ga. May 14, 2012) (collecting cases).

Based on this authority, Defendants argue that Auto-Owners' claims for declaratory relief concerning the duty to indemnify are not ripe because liability has yet to be determined in the Underlying Action.  (See doc. 36, p. 2; see also doc. 40, pp. 14–15; doc. 38, p. 2.)  The Court agrees.  The Underlying Action is ongoing, and the HOA (i.e., the insured) has not been found liable for any of the misconduct alleged in the state complaint.  "Until such judgment comes into being, the liabilities are contingent and may never materialize." Allstate Ins. Co. v. Employers Liab. Assurance Corp., 445 F.2d 1278, 1281 (5th Cir. 1971).  Accordingly, the issue of Auto-Owners' duty to indemnify is not ripe for adjudication until the HOA is in fact held liable in the Underlying Action.  State Farm Fire & Cas. Co. v. Middleton, 65 F.Supp.2d 1240, 1248 (M.D. Ala. 1999) (insurer's duty to indemnify insured "is not ripe for adjudication until [the insured] is in fact held liable in the underlying state court action").

Despite conceding that courts ordinarily wait to address an insurer's duty to indemnify until after their insured has been found liable, Auto-Owners contends that "the Georgia Court of Appeals has expressly rejected the argument that the issue of an insured's duty to indemnify is not ripe for determination prior to a finding of liability in an underlying action."  (Doc. 41, p. 21 (quoting Allstate Ins. Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1365 (N.D. Ga. 2017) (citing ALEA London Ltd. v. Woodcock, 649 S.E.2d 740, 746 (Ga. Ct. App. 2007))).)  Yet, "the question of whether a declaratory judgment petition is premature is one of federal law, not state law." Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc., 651 F. Supp. 2d 1367, 1373 n.9 (N.D. Ga. 2009).  As such, the Georgia Court of Appeals' determination as to when an insurer's duty to indemnify is ripe for adjudication is inapposite.  See id.  Moreover, although Auto-Owners cites Auto-Owners Ins. Co. v. Earley, No. 1:16-CV-1180-SCJ, 2017 WL 3449600 (N.D. Ga. Feb. 2, 2017), to show that district courts have "permit[ted] the resolution of questions surrounding both

the duty to defend and the duty to indemnify in a single declaratory judgment action," Earley is distinguishable given its procedural posture. (Doc. 30, pp. 10–11; see also doc. 41, pp. 20–21.) In Earley, "discovery and summary judgment ha[d] already [gone] forward" and the "'true facts' related to the applicable insurance policy conditions/terms [had] been discovered." 2017 WL 3449600, at *5. In this case, however, the discovery period has not ended, and the parties have not presented any concrete evidence enabling the Court to evaluate the HOA's liability in the Underlying Action. Nor has the state court determined liability or rendered a judgment. As such, "[g]iven the procedural posture of the [U]nderlying [Action], . . . it is unclear to the court how a ruling on [Auto-Owners'] duty to indemnify would be helpful to the parties" at this time. Hous. Specialty Ins. Co. v. Five Paces Inn Co., 1:19-CV-03319-CAP, 2019 WL 9633224, at *9 (N.D. Ga. Dec. 19, 2019).

Notwithstanding that the duty to indemnify issue is unripe, the Court rejects Defendants' request to dismiss Auto-Owners' claims for declaratory relief without prejudice to the extent they are based upon the duty to indemnify. (Doc. 36, p. 2; doc. 40, pp. 14–15.) As determined in Discussion Section II, supra, the Ameritas factors weigh in favor of retaining jurisdiction to adjudicate the coverage issues with respect to Auto-Owners' duty to defend. Therefore, discretion and common-sense dictate postponing—rather than dismissing without prejudice—consideration of the duty to indemnify "until the earlier of (a) a final disposition of the [U]nderlying . . . [A]ction or (b) a ruling on the duty to defend." Hickory Springs Ests. Homeowners Ass'n, 2008 WL 5381971, at *5. Numerous courts in this Circuit have adopted this approach. See e.g., id.; Employers Mut. Cas. Co. v. Evans, 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999) ("Both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined . . . ."); Atl. Cas. Ins. Co., 2007 WL 4335499, at *5–6 (allowing duty to indemnify

issue to "remain part of the case" but refusing to consider it until either a final disposition is entered in the underlying action or there is a ruling on the duty to defend); <u>Smithers Constr., Inc. v. Bituminous Cas. Corp.</u>, 563 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008) (same).

Accordingly, the Court will not consider the unripe issue of whether Auto-Owners has a duty to indemnify the HOA until there is a final disposition of the Underlying Action or until the Court issues a ruling on the duty to defend, whichever comes first.

## CONCLUSION

Based on the forgoing, the Court **DENIES AS MOOT** Defendants Gayle Baker, Donald J. Brunelle, Judith A. Brunelle, Jane Fraser, Burke McCall Harrison, Vicki Harrison, John Lijoi, Judith Phillips, Robert Williamson, and Renee Williamson's initial Motion to Dismiss, (doc. 27), **DENIES** those same Defendants' later-filed Motion to Dismiss, (doc. 36), and also **DENIES** Defendant Tabby Place Homeowners Association, Inc.'s Motion to Dismiss, (doc. 40).

Finally, the parties are **ORDERED** to **SHOW CAUSE** within **SEVEN (7) DAYS** of the date of this Order as to why they have not complied with the Court's prior directive that they confer and jointly file a Rule 26(f) Report (proposing discovery deadlines) within 14 days of the conclusion of the mediation (which was concluded on August 30, 2022, (doc. 72)). (<u>See</u> doc. 66, pp. 6–7.)

**SO ORDERED**, this 28th day of September, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA