IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO.: 4:21-cv-346 |
| v. | |
| TABBY PLACE HOMEOWNERS ASSOCIATION, INC., et al., | |
| Defendants. | |

**O R D E R**

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") brought this action against Olde Plantation Group, LLC ("Olde Plantation"), Palmetto Building Group, LLC ("Palmetto"), its insured, Tabby Place Homeowners Association, Inc. (the "HOA"), (collectively the "Tabby Place Defendants"), and others, seeking a declaratory judgment that it has no duty to indemnify or defend the HOA in an underlying lawsuit (the "Underlying Action"). (Doc. 112.) The plaintiffs in the Underlying Action are various property owners who are also Defendants in the current action (the "Property Owner Defendants" or the "Property Owners"). (Doc. 112, p. 6.) There are three motions presently before the Court: (1) Plaintiff Auto-Owners's Motion for Summary Judgment, (doc. 169); (2) the Tabby Place Defendants' Motion for Summary Judgment, (doc. 167); and (3) the Property Owner Defendants' Motion for Summary Judgment, (doc. 171). The issues have been fully briefed. (Docs. 167, 170, 171, 177, 178, 180, 185, 186, 188, 191, 192, 193 & 195.) For the reasons below, the Court **GRANTS** Plaintiff Auto-Owners's Motion for Summary Judgment, (doc. 169); **DENIES** the Tabby Place Defendants' Motion for Summary Judgment, (doc. 167); and **DENIES** the Property Owner Defendants' Motion for Summary Judgment, (doc. 171).

## BACKGROUND

**I.     The Underlying Action**

The Tabby Place Subdivision ("Tabby Place") is a residential development which contains a drainage system that utilizes storm pipes and three retention ponds to collect stormwater runoff. (Doc. 112–2, p. 5.) The Property Owners own ten parcels of land that are adjacent to Tabby Place and another subdivision, called Captain's Cove Subdivision, (collectively, the "Subdivisions") on St. Simons Island, Georgia. (Doc. 179, p. 4.) In 2019, the Property Owners filed the Underlying Action in Glynn County Superior Court against the owners, developers, and homebuilders of the Subdivisions, alleging, among other things, that the Subdivisions' design, construction, use, and maintenance of retention ponds and other stormwater maintenance systems caused flooding and damage to their properties.[1] (Doc. 179, pp. 3–4; doc. 112, pp. 7–8.)

At the time the Property Owners filed the Underlying Action, Olde Plantation owned the retentions ponds. (Doc. 179, p. 4.) On September 14, 2020, Olde Plantation conveyed the retention ponds to the HOA by quitclaim deed, which was recorded on September 18, 2020. (Id. at p. 5.) On February 17, 2021, the Property Owners moved to add the HOA as a defendant in the Underlying Action. (Doc. 179, p. 5.) The Property Owners then filed their Second Amended Complaint (the "State Complaint"). (Doc. 112-2.)

**II.     The HOA's Insurance Policies with Auto-Owners**

In April 2019, Auto-Owners issued two insurance policies to the HOA: (1) a Commercial General Liability Policy (the "CGL Policy") and (2) a Commercial Umbrella Policy (the "Umbrella Policy," and collectively with the CGL Policy, "the Policies").[2] (Doc. 170-1, pp. 13–

---

[1] The Underlying Action is captioned Baker, et al. v. Olde Plantation Group, LLC, et al., No. CE19-00671 (Glynn Co. Sup. Ct.). (See docs. 112-1, 112-2.)

[2] The Policies had an effective date of April 5, 2019, through April 5, 2020. (Doc. 112, ¶¶ 31, 49; see doc. 112-4, p. 2; doc. 112-7, p. 2.) Auto-Owners renewed each of the Policies in 2020 and 2021, such that the

14; doc. 181, p. 7; doc. 112-4, p. 2; doc. 112-7, p. 2.)  The CGL Policy provides that Auto-Owners "will pay those sums that [the HOA] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies," as well as "'personal and advertising injury' to which this insurance applies."  (Doc. 112, pp. 14, 21; see also doc. 112-6, pp. 26, 30.)  The Umbrella Policy provides that Auto-Owners "will pay those sums included in ultimate net loss that the insured becomes legally obligated to pay as damages because of . . . property damage . . . to which this insurance applies caused by an incident."  (Doc. 112, pp. 27–28; doc. 112-8, pp. 19–20 (emphasis removed).)

The Policies also contain various coverage exclusions.  (Doc. 170-1, pp. 14–16; doc. 112, pp. 16–21, 23–25, 31–38; see doc. 112-6, pp. 27–32; doc. 112-8, pp. 21–28.)  For example, the CGL Policy excludes coverage for "expected or intended injury," "contractual liability," "pollution," and damage to certain types of "property."  (Doc. 170-1, pp. 14–16; doc. 112, pp. 16–21, 23–25, 31–38; see doc. 112-6, pp. 27–29.)  Concerning "pollution," both the CGL Policy and the Umbrella Policy exclude coverage for property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of" "pollutants."  (Doc. 170-1, p. 15; doc. 112, pp. 17–18, 32; see doc. 112-6, p. 27; doc. 112-8, pp. 22–23.)  Under the CGL Policy, "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  (Doc. 170-1, p. 16; doc. 112, p. 16 n.3; see doc. 112-6, p. 38.)  The definition of "pollutant" is almost identical under the Umbrella Policy, which states, "[p]ollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,

---

HOA was covered under both policies through at least April 5, 2022.  (Doc. 112, pp. 12–14, 26–27; see also doc. 112-5, p. 2; doc. 112-6, p. 11; doc. 112-8, p. 10; doc. 112-9, p. 14.)

3

vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." (Doc. 112, p. 32 n.5; see doc. 112-8, p. 17.)[3]

### III.   Auto-Owners's Reservation of Rights

Auto-Owners first received notice of the Underlying Action on March 1, 2021.  (Doc. 179, p. 5.)  About two weeks later, Auto-Owners sent the HOA a Reservation of Rights letter which advised that "Auto-Owners will provide the HOA with a defense subject to a reservation of rights." (Doc. 179, p. 5; doc. 112-3, p. 2.)  The Reservation of Rights letter stated that Auto-Owners

> expressly reserves all of its rights under the [P]olicies and does not waive any of its rights or defenses under the [P]olicies or under applicable law.  Moreover, Auto-Owners reserves its right to later disclaim coverage and any duty to defend and/or indemnify the HOA for all or part of any judgment or settlement that might be obtained against the HOA in the [U]nderlying [Action].

(Doc. 112-3, p. 2.)  Auto-Owners added that it would defend the HOA in the Underlying Action "pending a resolution of the coverage issues presented in this claim." (Id. at p. 21.)

### IV.   Procedural History

On December 2, 2021, Auto-Owners brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it has no duty to defend or indemnify the HOA for the claims asserted against it in the Underlying Action.  (Doc. 1.)  On February 24, 2022, the Property Owners filed a Motion to Dismiss and an Answer to Auto-Owners's First Amended Complaint.  (Docs. 36, 38.)  In the motion, the Property Owners argued that Auto-Owners's claims were "premature" and should be dismissed.  (Doc. 36, p. 2.)  The HOA filed an additional "Motion to Dismiss or Stay," in which it similarly argued that the Court should dismiss or stay the First Amended Complaint "to the extent it prematurely seeks a declaration of the duty to indemnify." (Doc. 40, pp. 14–15.)

---

[3] The Court refers to the Policies' exclusions regarding pollutants as "the Pollution Exclusions."

The Court found that the duty to indemnify claim was not ripe for adjudication because liability had yet (and still has yet) to be determined in the Underlying Action. (Doc. 73, pp. 24–26.) But the Court determined that it should retain jurisdiction to adjudicate the coverage issues with respect to Auto-Owners's duty to defend and therefore decided to "postpon[e]—rather than dismiss[] without prejudice—consideration of the duty to indemnify 'until the earlier of (a) a final disposition of the [U]nderlying . . . [A]ction or (b) a ruling on the duty to defend.'" (Id. at p. 26 (quoting Auto-Owners Ins., Co. v. Hickory Springs Ests. Homeowners Ass'n, Inc., No. 5:08-CV-049(HL), 2008 WL 5381971, at *5 (M.D. Ga. Dec. 23, 2008)).) Auto-Owners then filed a Second Amended Complaint ("SAC"). (Doc. 112.)

In its SAC, Auto-Owners asserts twenty-one "Claims for Relief," asking the Court to declare, among other things, that the Policies' exclusions preclude coverage for the Property Owners' claimed damages in the Underlying Action. (Doc. 112, pp. 39–88.) As one example of the twenty-one claims, Auto-Owners's Fourth Claim for Relief states that "[the Property Owners] . . . allege that the stormwater is 'discharging sediments and pollutants onto [their] property[.]' . . . To the extent that the alleged irritants and contaminants described in the Underlying [Action] qualify as 'pollutants,' the [CGL Policy's] pollution exclusion . . . applies to any such damages arising therefrom." (Id. at pp. 49–50 (quoting doc. 112-2, p. 12).)

On January 6, 2025, the Tabby Place Defendants, Auto-Owners, and the Property Owners filed the at-issue Motions for Summary Judgment, all seeking summary judgment in their favor on various issues. (Docs. 167, 169 & 171.)

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing

5

law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.[4]

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). Accordingly, in considering Plaintiff's motion for summary judgment, the Court will view

---

[4] Under Georgia law, the insured has the burden to prove that it complied with the conditions precedent under the policy, that it suffered a loss covered by the policy, and that the insurer waived its right to raise a certain defense. Reserve Life Ins. Co. v. Davis, 164 S.E.2d 132, 133 (Ga. 1968); Wolverine Ins. Co. v. Sorrough, 177 S.E.2d 819, 822 (Ga. Ct. App. 1970); Metro. Life Ins. Co. v. Smith, 172 S.E. 654, 656 (Ga. Ct. App. 1934); see also 17A STEVEN PLITT ET. AL., COUCH ON INSURANCE § 254:11 (3d ed. 2022). However, the insurer bears the burden to prove a policy exclusion, exception, or other affirmative defense applies. Reserve Life Ins. Co. v. Ayers, 121 S.E.2d 649, 654 (Ga. 1961); see also 17A STEVEN PLITT ET. AL., COUCH ON INSURANCE § 254:12 (3d ed. 2022).

the facts in the light most favorable to Defendants, and in considering Defendants' motions, the Court will view the facts in the light most favorable to Plaintiff.  See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).  Nonetheless, "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).

## DISCUSSION

The Tabby Place Defendants move for summary judgment in their own favor on four issues, claiming the following to be true: (1) the Policies were in effect at the time of the initial occurrence of any purported injury to the Property Owners; (2) the HOA had no notice or knowledge of a potential claim against it when it entered into the Policies; (3) proper and timely notice was given to Auto-Owners as soon as a claim was made against the HOA; and (4) no exclusion contained within the Policies applies to the Property Owners' claims in the Underlying Action. (Doc. 167, p. 16.)  The Property Owner Defendants' Motion for Summary Judgment is almost identical to the Tabby Place Defendants' Motion.  (Doc. 171.)

Auto-Owners moves for summary judgment in its own favor on three issues, claiming the following: (1) there was no "occurrence" as defined by the Policies; (2) the Pollution Exclusions bar coverage; and (3) the HOA failed to give Auto-Owners timely notice of the claim or suit.  (Doc.

170, p. 1.) Because the pollution exclusion issue is determinative, the Court need not address any other issue.

I.     **Applicable Law Governing Insurance Policies**

Because this is a diversity jurisdiction case, the Court is bound by the state law governing the contract. Evanston Ins. Co. v. Xytex Tissue Servs., LLC, 378 F. Supp. 3d 1267, 1284 (S.D. Ga. 2019). Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Hays v. Ga. Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012) (citation omitted). An insurer's duty to defend extends to all claims that "potentially or arguably" fall within the policy's coverage, Elan Pharm. Rsch. Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998), and "is excused only if the petition unambiguously excludes coverage under the policy," Colony Ins. Co. v. Corrosion Control, Inc., 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005).

"When faced with a conflict over insurance coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous." Hays, 722 S.E.2d at 925–26 (citing Old Republic Union Ins. Co. v. Floyd Beasley & Sons, 551 S.E.2d 388, 390 (Ga. Ct. App. 2001)). Georgia courts strictly construe ambiguities against the insurer and strictly construe coverage exclusions the insurer seeks to invoke. See, e.g., Auto-Owners Ins. Co. v. Neisler, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) ("In cases of ambiguity, . . . exclusions from coverage the insurer seeks to invoke are strictly construed . . . ."); Fid. Nat. Title Ins. Co. v. Keyingham Invs., LLC, 702 S.E.2d 851, 853 (Ga. 2010) ("[I]n the absence of language in a title insurance commitment that plainly excludes coverage for a forgery, a commitment must be construed to provide coverage for forgeries."). Georgia courts "will not strain to extend insurance coverage where none was contracted or intended." Hays, 722 S.E.2d at 926 (citing Jefferson Ins. Co., etc. v. Dunn, 496 S.E.2d 696, 699 (Ga. Ct. App. 1998)).

Because "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured[,] [Georgia courts] look to the allegations of the complaint to determine whether a claim covered by the policy is asserted." Hartford Cas. Ins. Co. v. Robert P. Copeland, P.C., No. 1:09-CV-2347-ODE, 2010 WL 11479286, at *2 n.2 (N.D. Ga. Aug. 24, 2010) (internal quotations omitted); see also Hays, 722 S.E.2d at 927 ("The underlying facts and circumstances of the claims asserted determine whether or not an insurance policy exclusion applies, because the exclusionary clause is focused solely upon the genesis of the underlying Plaintiff's claims; if those claims arose out of the excluded acts then coverage need not be provided.") (citing Video Warehouse, Inc. v. Southern Trust Ins. Co., 678 S.E.2d 484, 488 (Ga. Ct. App. 2009)). Courts analyze an insurer's duty to defend "without making factual determinations" or evaluating the credibility of the complaint's allegations. Hickory Springs Ests. Homeowners Ass'n, 2008 WL 5381971, at *4; see Pa. Nat. Mut. Cas. Ins. Co. v. King, No. 11-0577-WS-C, 2012 WL 280656, at *3–4 (S.D. Ala. Jan. 30, 2012).

## II. Whether the Pollution Exclusions Bar Coverage

Auto-Owners argues that it has no duty to defend or indemnify the HOA in the Underlying Action because the Property Owners' alleged damages fall within the Pollution Exclusions. (Doc. 170, pp. 15–20; see also doc. 112, pp. 47–51, 60–62, 71–75.) Auto-Owners contends that "all of the allegations about flooding, ponding water, excess water[,] and runoff qualify as 'pollutants' under the [P]olicies' clear and unambiguous pollution exclusions." (Doc. 170, p. 20.) The Tabby Place Defendants and Property Owners, on the other hand, contend that the alleged damages fall outside the Policies' Pollution Exclusions. (Doc. 167, pp. 12–16; doc. 171, pp. 7–9.) To determine whether the Pollution Exclusions apply, the Court must decide whether, as alleged in the Underlying Action, the Property Owners' property damage was caused by the discharge of "pollutants," as defined by the Policies' unambiguous terms. Whether a certain substance qualifies

9

as a "pollutant" under an insurance policy exclusion ordinarily is a question of law for a court. See, e.g., Evanston Ins. Co. v. Xytek Tissue Servs., LLC, 378 F. Supp. 3d 1267, 1285–89 (S.D. Ga. 2019); Barrett v. Nat'l Union Fire Ins. Co., 696 S.E.2d 326, 329–31 (Ga. Ct. App. 2010).

In the State Complaint, the Property Owners allege that the HOA's "storm water systems are designed to infiltrate storm water into the ground through retention ponds, which have caused high groundwater levels. Consequently, storm water infiltration is causing flooding of [the Property Owners'] [p]roperty after heavy rainfall." (Doc. 112-2, p. 4.) The State Complaint also alleges that the HOA has "caused and continue[s] to cause storm water to be repeatedly collected, concentrated, and infiltrated into the ground, which causes flooding of [the Property Owners'] [p]roperty." (Id. at p. 11.) This flooding allegedly has caused some of the Property Owners' on-site sewage systems to short-circuit, leading to sanitary discharges (such as fecal coliform) entering the Subdivisions' ground and surface waters. (Id.) Additionally, the Property Owners allege that "the increased volume of storm water [is] discharging sediments and pollutants onto" their property because the storm water "from the Subdivisions washes over the loose soil on . . . construction sites, along with various materials and products being stored [there]." (Id. at pp. 4, 12.)

Within the Policies, "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant." (Doc. 170-1, p. 16; doc. 112, pp. 17 n.3, 32 n.5; doc. 112-6, p. 38; doc. 112-8, p. 17.) The definition does not expressly include stormwater or groundwater. (Doc. 112-6, p. 38; doc. 112-8, p. 17.) Accordingly, the Court must determine whether "irritant" or "contaminant" unambiguously includes the water at issue.

The parties focus on two major arguments on this topic. The first is whether stormwater alone (not mixed with anything else) can be considered an "irritant or contaminant" and thus a pollutant. The second is whether *rising groundwater* (rather than stormwater flowing on the

surface of one property to another) qualifies as a pollutant under the Policies. The Court will address each in turn.

As to the first argument, the Tabby Place Defendants argue that "stormwater itself is not an irritant or contaminant and therefore, is not a pollutant," (doc. 167, pp. 14–15; doc. 171, pp. 7–9), and since "there is no allegation in the Underlying [Action] that the stormwater released into and mixed with the groundwater on site . . . is unclean in any way," the Pollution Exclusions do not apply. (Doc. 180, p. 13.) Auto-Owners disputes this position and cites several cases in support. (Doc. 170, pp. 17–19.)

The Court agrees with Auto-Owners that "storm water—even when uncontaminated—is a 'pollutant.'" (Id. at p. 17 (quoting Associated Indem. Corp. v. Hughes, No. 4:18-CV-00201, 2019 WL 2713056, at *7 (N.D. Ga. April 25, 2019).) Courts applying Georgia law to exclusions like the Pollution Exclusions have repeatedly held that stormwater alone qualifies as a pollutant. See Owners Ins. Co. v. Chadd's Lake HOA, No. CIVA 1:05CV0475–JOF, 2006 WL 1553888, at *5 (N.D. Ga. May 30, 2006) (citing Owners Ins. Co. v. Lake Hills HOA, Inc., 57 F. App'x 415 (11th Cir. 2002)); Travelers, 2008 WL 4372004, at *9 ("It is undisputed that excess water, resulting from the [d]efendant's development activity and perhaps exacerbated by unexpected rainfall, caused damage . . . . [S]torm water is a pollutant."); Centro Dev. Corp. v. Central Mut. Ins. Co., No. 1:16-CV-4037-RWS, 2017 WL 3449580, at *4 (N.D. Ga. July 10, 2017), aff'd, 720 F. App'x 1004 (11th Cir. 2018) ("cases from both this court and the Eleventh Circuit are clear that storm water alone is a pollutant"); Prov. Group of Ga. LLC v. Wesco Ins. Co., No. 1:23-CV-2336-TWT, 2023 WL 6302329, at *2 (N.D. Ga. Sept. 23, 2023) (granting dismissal because stormwater from construction work was a "pollutant" and pollution exclusion barred coverage); Century Comm. of Ga., LLC v. Selective Way Ins. Co., No. 1:18-CV-5267-ODE, 2019 WL 7491504, at *6–7 (N.D. Ga. Oct. 25, 2019) (granting summary judgment and holding that "'water runoff, sediment, silt,

11

and other pollutants' are considered pollutants" so "property damage resulting therefrom is excluded") (internal citation omitted). Contamination is not a prerequisite for stormwater to qualify as a "pollutant." See Auto-Owners Ins. Co. v. Stone Crossing Owners Ass'n, Inc., No. 2:20-cv-20-RWS, 2021 WL 12313048, at *8 (N.D. Ga. Aug. 18, 2021) ("[S]torm water—even when uncontaminated—constitutes a 'pollutant.' This is not a novel issue. To the contrary, cases from both this court and the Eleventh Circuit are clear that storm water alone is a pollutant.") (citing Centro Dev. Corp., 2017 WL 3449580, at *4; Hughes, 2019 WL 2713056, at *7; Douglasville Dev., 2008 WL 4372004, at *9). Accordingly, the Court rejects Defendants' argument that the Pollution Exclusions do not apply because the Underlying Litigation primarily concerns allegations that stormwater has damaged the Property Owners' property.

Defendants' second argument is that "many, if not all, of the allegations in the Underlying [Action] are based on the Tabby Place Defendants' purported increase of the groundwater table underneath the Property Owner Defendants' properties" and thus the Court must find that rising *groundwater* qualifies as a "pollutant" for the Pollution Exclusions to apply.[5] (See doc. 180, pp. 3, 6, 11.) The Tabby Place Defendants contend that Georgia courts have never held that rising groundwater is a pollutant under a typical pollution exclusion, and they posit that this may be an issue of first impression in Georgia. (Doc. 186, p. 3.) As a result, they urge that the pollution

---

[5] The Tabby Place Defendants claim that Georgia courts "have acknowledged the distinction between surface water runoff and other forms of hydrological discharge" and that this case does not involve surface water. (Doc. 186, pp. 2–3.) But the cases they rely on concern first-party property claims involve facts and policy provisions that differ from those at issue here. In the cases cited by the Tabby Place Defendants, courts assessed whether interior water damage to an insured's premises was caused by water leaking from interior pipes (and therefore the damages were covered) or by water that flowed into the premises from outside (and therefore constituted excluded surface water). See Selective Way Ins. Co. v. Litig. Tech., Inc., 606 S.E.2d 68 (Ga. Ct. App. 2004); Hirschfield v. Cont'l Cas. Co., 405 S.E.2d 737 (Ga. Ct. App. 1991); Aetna Fire Underwriters Ins. Co. v. Crawley, 207 S.E.2d 666 (Ga. Ct. App. 1974). The Underlying Action does not involve a dispute about whether water infiltration originated from a leak inside versus outside a structure and the cited cases do not discuss whether water from an outside source qualifies as a "pollutant" as defined in policy exclusions.

exclusion is ambiguous as it relates to the specific facts at issue in the Underlying Action and that it therefore does not apply.  (Id. at p. 2.)  Auto-Owners, on the other hand, argues that "[t]he pollution exclusion applies regardless of how the excess storm water manifests or is discharged," claiming that "stormwater still qualifies as a 'pollutant' as a settled matter of Georgia law, even if it 'mounds' or enters the groundwater before discharging."  (Doc. 170, pp. 18–19.)

The Court finds no meaningful distinction in the fact that the stormwater here is allegedly infiltrating through the ground and thus increasing the amount of groundwater on the adjacent properties, rather than there being a direct stormwater runoff onto the adjacent properties.  It is ultimately the stormwater—a "pollutant" under Georgia law—creating the damage giving rise to the Underlying Action.  Courts applying Georgia law have held that unambiguous language in pollution exclusions such as the ones here exclude all pollutants and do not exclude pollutants based on their source or location.  Owners Ins. Co. v. Farmer, 173 F. Supp. 2d 1330, 1333–34 (N.D. Ga. 2001).  The Pollution Exclusions bar coverage for alleged property damage from the "discharge, dispersal, seepage, migration, release or escape" of pollutants.  (Doc. 112-6, p. 27.)  The issue alleged in the Underlying Action is the movement of stormwater, a contaminant.  Because the Property Owners' claims stem from alleged property damages caused by the "discharge, dispersal, seepage, migration, release or escape" of stormwater from the HOA's retention ponds to the Property Owners' properties, the Pollution Exclusions "completely foreclose[] coverage" under the Policies.  Auto-Owners Ins. Co. v. Minor, No. 1:10-cv-03019-SCJ, 2012 WL 13005360, at *11 (N.D. Ga. Feb. 10, 2012).  Thus, the Tabby Place Defendants' argument that the "Pollution Exclusion, is at the very least, ambiguous as it relates to the specific facts at issue," is futile in the face of overwhelming precedent.  (Doc. 186, pp. 2–4.)

## CONCLUSION

Consistent with well-established precedent, the water in issue is unambiguously a pollutant under the Policies' terms, and the Pollution Exclusions thus bar coverage with respect to the Property Owners' claims. Because the Property Owners' alleged damages in the Underlying Action are excluded from coverage, the Court **GRANTS** Plaintiff Auto-Owners's Motion for Summary Judgment, (doc. 169).[6] The Court **DENIES** Defendant Property Owners' Motion for Summary Judgment on this issue, (doc. 171), and the Tabby Place Defendants' Motion for Summary Judgment on this issue, (doc. 167). Because the Pollution Exclusions bar coverage, the Defendants' requests for summary judgment on other grounds are moot. The Court **DIRECTS** the Clerk of Court to enter judgment in Plaintiff's favor and **CLOSE** this case.

**SO ORDERED**, this 3rd day of September, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] In the conclusion section of its briefing, Auto-Owners slips in a terse and otherwise unsupported request that it be awarded "its fees and costs." (Doc. 170, p. 25.) The Court declines to make such an award due to the failure to make a formal motion for such award as well as the lack of legal and factual support for any such award.